```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

IN RE: TERRORIST ATTACKS ON
SEPTEMBER 11, 2001,
                                       03 MDL 1570 (SN)
                                       Remote Proceeding
------------------------------x
                                       New York, N.Y.
                                       September 29, 2021
                                       2:00 p.m.

Before:

                    HON. SARAH NETBURN,

                       U.S. Magistrate Judge
```

```
        J715911c                         phone conference

 1                              APPEARANCES

 2      KREINDLER & KREINDLER
               Attorneys for Plaintiffs Executive Committee
 3      BY:    ANDREW J. MALONEY
               STEVEN POUNIAN
 4             JAMES KREINDLER
               MEGAN W. BENETT
 5
        MOTLEY RICE
 6             Attorneys for Plaintiffs Executive Committee
        BY:    ROBERT T. HAEFELE
 7             JODI W. FLOWERS
               JADE HAILESELASSIE
 8             C. ROSS HEYL
               JOHN EUBANKS
 9
        COZEN O'CONNOR
10             Attorneys for Plaintiffs Executive Committee
        BY:    SEAN P. CARTER
11             STEPHEN COZEN
               J. SCOTT TARBUTTON
12
        ANDERSON KILL P.C.
13             Attorneys for Plaintiffs Executive Committee
        BY:    JERRY S. GOLDMAN
14             ETHAN GREENBERG

15      JONES DAY
               Attorneys for Defendant Dubai Islamic Bank
16      BY:    STEVEN COTTREAU

17      GOETZ & ECKLAND, P.A.
               Attorneys for Defendant WAMY
18      BY:    FREDERICK J. GOETZ

19      THE LAW FIRM OF OMAR T. MOHAMMEDI, LLC
               Attorneys for Defendant WAMY
20      BY:    OMAR T. MOHAMMEDI
               JILL L. MANDELL
21
        LEWIS BAACH PLLC
22             Attorneys for Defendant WAMY
        BY:    AISHA BEMBRY
23             WALEED NASSAR
               SUMAYYA KHATIB
24
        BERNABEI & KABAT PLLC
25             Attorneys for Defendant WAMY
        BY:    ALAN R. KABAT
```

J715911c                         phone conference

APPEARANCES (Cont'd)

SALERNO & ROTHSTEIN
     Attorneys for Defendant Kadi
BY:  PETER C. SALERNO

1           (Case called; The Court and all parties appearing
2  telephonically)
3           THE DEPUTY CLERK:  Starting with the Plaintiffs
4  Executive Committee, state your appearances.  From Kreindler &
5  Kreindler?
6           MR. MALONEY:  Andrew Maloney, your Honor.
7           THE COURT:  Good afternoon.
8           MR. KREINDLER:  Jim Kreindler.  Good afternoon, your
9  Honor.
10          MS. BENETT:  Hi, Judge.  This is Megan Benett from
11 Kreindler & Kreindler.
12          MR. POUNIAN:  And Steve Pounian from Kreindler &
13 Kreindler, your Honor.
14          THE COURT:  Thank you.
15          And from Motley Rice?
16          MR. HAEFELE:  From Motley Rice, your Honor, it is
17 Robert Haefele and I also have with me Jodi Flowers, John
18 Eubanks, Ross Heyl and Jade Haileselassie.
19          THE COURT:  Thank you.
20          From Cozen O'Connor?
21          MR. CARTER:  Good afternoon, your Honor.  You have
22 Sean Carter, Scott Tarbutton, and Stephen Cozen.
23          THE COURT:  Thank you.
24          And from Anderson Kill?
25          MR. GOLDMAN:  Good afternoon, your Honor.  This is

1    Jerry Goldman, and with me is Ethan Greenberg.
2              THE COURT:  Thank you.
3              Are there any other lawyers who want to state their
4    appearance on behalf of the plaintiffs?  Hearing none, on
5    behalf of Dubai Islamic Bank?
6              MR. COTTREAU:  Good afternoon, your Honor.  It is
7    Steven Cottreau from Jones Day.
8              THE COURT:  Thank you.
9              On behalf of WAMY?
10             MR. MOHAMMEDI:  Your Honor, Omar Mohammedi, and I have
11   Frederick Goetz as well as Jill Mandell.
12             THE COURT:  Thank you.
13             And, on behalf of the Muslim World League and IROO and
14   others?
15             MS. BEMBRY:  Good afternoon, your Honor.  This is
16   Aisha Bembry.  Here with me is Waleed Nassar.  On the line is
17   Sumayya Khatib.  And, also for the individual charity
18   officials, Alan Kabat.
19             THE COURT:  Thank you.
20             And for Defendant Yassin Kadi?
21             MR. SALERNO:  Peter Salerno, your Honor, from Salerno
22   & Rothstein.
23             THE COURT:  Thank you.
24             Anyone else on the defense side that would like to
25   state an appearance?  Great.

1          Thank you, all, for being here on relatively short
2  notice and thank you, as well, for providing me, on short
3  notice, with your expert list.  That was very helpful.
4          I want to talk with you in connection with the letter
5  that was filed on September 3rd with the parties' proposal for
6  the next steps in the actions relating to the defendants who
7  are here today.
8          I understand that both sides agree that there will be
9  significant challenges to the parties' experts and that the
10 parties jointly believe that those motions should go forward,
11 at least in the first instance, before other motions are filed.
12 I know that the plaintiffs have a slightly more concurrent
13 proposal in mind.
14         I see that the parties have, I think, 28 reports in
15 total, which I believe is about 1,400 pages of expert reports.
16 To the extent the parties intend to move against all of those
17 experts, I think it is inefficient for the Court to consider
18 all of those motions at once.  And so, I wanted to speak with
19 you about essentially a sampling of expert challenges, and I
20 will tell you what I am thinking of doing and then I am happy
21 to hear from the parties about that proposal.
22         What I am of the view would be the most efficient way
23 to proceed is to allow both sides, meaning plaintiffs on one
24 side defendants on another side, to pick three experts to
25 challenge and allow the Court to evaluate those experts and set

1  forth the applicable law for expert challenges and provide an
2  opinion on the admissibility of the testimony that is
3  contemplated of those experts.  The idea is that we could do
4  that sort of briefing program in a significantly more truncated
5  schedule than what is proposed by the parties and the Court
6  could turn that decision around much more quickly than we could
7  if we were looking at 28 reports.  I'm not suggesting any party
8  would be denied the right to file a motion to challenge an
9  expert but, rather, that I would limit those challenges in the
10 first instance to six, three on each side.  Once the parties
11 have my ruling, we will then set a schedule for dispositive
12 motions and any additional challenges that the parties wish to
13 make at that time, hopefully educated by my earlier ruling and
14 for experts where a challenge is likely not to be
15 well-received, the parties may choose not to challenge that
16 expert or maybe, based on a ruling, the parties may agree that
17 an expert is subject to challenge or should be dropped
18 altogether.  But, I think the parties would benefit from an
19 initial ruling from me on a much smaller group of experts.
20         The last thing I will say is that in looking over your
21 description, which again I am quite appreciative that you did
22 that for me so quickly, there is different ways to characterize
23 the testimony that is contemplated but, broadly speaking, it
24 appears to me that the experts fall into a handful of
25 categories.  I think there is a very large category of experts

who are going to be sort of geopolitical or historical experts talking about events in the region and other sort of historical testimony including about Islam, about the region and politics, about certain international relations.  That seems to me a very large category of testimony.  It seems that there is another category of testimony regarding financing, international money laundering rules, accounting, banking practices, etc.  I think that that is arguably another category.  And then there appears to be another large category of sort of general 9/11 planning and organizing or funding for the 9/11 attacks.  We have gone through this list a couple of times now and I think you could come up with various categories and you could come up with 28 categories, if you wanted to.  I am sure everybody has something unique to add.  But it does seem that, broadly speaking, the testimony does group and so my thinking is that we should have a limited number of challenges in the first instance and proceed as such.

So, those are my opening remarks.  I don't know who on the plaintiffs side wants to take the lead here.

MR. HAEFELE:  Your Honor, it is Robert Haefele from Motley Rice.

I haven't had, obviously, an opportunity to hear what my other colleagues have to say about the proposal so I'm not sure that I am speaking necessarily for everyone.  I understand what your Honor is proposing and I think that, by and large,

1    this seems like it will probably be useful and workable.  A
2    couple things that I would point out, though, that I am not
3    sure that I wouldn't expect that all of the plaintiffs' experts
4    will be challenged or that all of the defendants' experts will
5    be challenged overall, but I'm not sure that affects your
6    numbers that much.  What I think does affect your numbers, your
7    Honor, is the relative disparity between the defendants having
8    16 experts that they have proposed and the plaintiffs having
9    only six experts that they have proposed, and each of us
10   getting three and three.  I don't know whether that means the
11   manner in which you rule would be guidance for both sides
12   equally or not.  But, in terms of ruling in or out experts, the
13   end result could be that you are ruling on half of the
14   plaintiff's experts and only a fraction of the defendant's
15   experts.
16           THE COURT:  Thank you.
17           MR. HAEFELE:  But, in truth, again, the plaintiff has
18   six experts compared to defendants' 16 and, by and large, we
19   would anticipate there wouldn't be any real credible challenges
20   to the plaintiff's experts given that they're all people who
21   have held high-level U.S. government positions, they've all
22   been qualified repeatedly in counter-terrorism cases
23   previously, and Courts have applied the federal rules to these
24   experts already, by and large, and found them to be credible
25   and found them to be experts who were qualified and their

methodology meets the standards under the rules.  So, I suspect that, you know, by and large what the defendants are looking at is, I would imagine, discrete areas of dispute regarding each of the experts and that, I suppose, that allowing them to pick certain areas or certain experts or a number of experts probably works, your Honor.

I'm not sure that there is any other concerns that we have other than the relative number.  And I suppose, your Honor, it would still leave open what the page lengths would be.

THE COURT:  Understood.  OK.  Thank you.

Is there one lawyer who might take the lead here for the defendants or does everybody have a different view?

MS. BEMBRY:  Good afternoon, your Honor.  This is Aisha Bembry.

Likewise, we haven't had an opportunity, obviously, to discuss this proposal but first, thank you, your Honor, for the proposal.  We understand your Honor's efforts to also try to streamline and are appreciative of that as that was the defendant's goal in terms of approaching this in the sequencing manner that we suggested.

With regards to the IROO/MWL defendants, I can tell you that the general manner, we have no objection to the approach that you are suggesting.  Certainly it would have the benefit of allowing us to streamline the issues.

1        With regard to I guess clarifying a couple of points,
2   we would like to know in terms of the page limits and then the
3   timeline as to when the initial round of briefing would be due.
4   Contrary to what Mr. Haefele has said, the defendants do have
5   very serious and credible challenges to the plaintiffs' experts
6   and do intend to raise a number of significant issues.  So, we
7   would like to know in terms of page limits and timing so that
8   we can better assess our ability to accomplish what your
9   Honor's goal is.
10            THE COURT:  Thank you.
11            Anything further from the defendants' side who wants
12   to speak on this?
13            MR. SALERNO:  Yes, your Honor.  This is Peter Salerno
14   for Yassin Kadi.
15            One point is just a factual correction I think of
16   Mr. Haefele which is he said, I believe, all of plaintiffs'
17   experts have been qualified in federal court cases.  The expert
18   that has been offered by plaintiffs against Mr. Kadi, one
19   Victor Comras has, to our knowledge, never testified before.
20   He has never been qualified as an expert.  Yes, he is a former,
21   retired, high-government official and so that's just a factual
22   correction we would like to make.  Obviously, the plaintiffs
23   may correct me on my factual correction.
24            The other is a little more substantive on the theory
25   that perhaps Mr. Kadi's Daubert motion against Mr. Comras might

1    be relegated to the second round and not the lead motion.  The

2    disadvantage, I think, for every party not having the

3    sequential briefing schedule, is that you have to make your

4    dispositive motion -- if they're simultaneously you have to

5    make your dispositive motion kind of in the alternative saying,

6    well, if you grant the Daubert motion this is what our case

7    looks like and if you deny it this is what it looks like and

8    that causes extra pages and extra work and uncertainty, that

9    sort of thing.  I don't know how to solve it because the other

10   half of me likes your proposal very much in the sense that it

11   makes a lot of sense and we get some guidance.  So, I put that

12   out there.  Maybe other people have thoughts on that too.

13            THE COURT:  Thank you.

14            I mean, for what it is worth, I think the most common

15   and traditional way to proceed at the summary judgment and

16   Daubert stage is to submit your motion simultaneously.  And so,

17   although I appreciate the sort of alternative argument that

18   might be required, I think that that is something that the

19   Court sees all the time and that parties are required to

20   contend with all the time, and it may also be that given sort

21   of these bellwether challenges, that the parties will have a

22   better idea of the success of pressing particular expert

23   testimony by the time they're raising dispositive motions and

24   we will have a better feel for whether or not they can reliably

25   rely on an expert's testimony in their dispositive motions

1      All right.  Ms. Bembry asked about timing and I think
2 following today's conference I'm going to take all of this
3 under advisement and issue an order, but I think if we are
4 talking only about challenges to three experts, I think that
5 the schedule will likely look similar to what is proposed in
6 the letter by the plaintiffs with giving the parties 45 days to
7 make their motions and briefs, with responses due 45 days
8 thereafter, and replies 35 days following.  I think that's
9 likely to be the schedule and so the parties should keep that
10 in mind.  I intend to issue a ruling in the next day or two so
11 you will know the final score shortly.  But, that's what I am
12 inclined towards.
13      Let me ask another question, let me move now to Dubai
14 Islamic Bank.  I understand that in the letter submission --
15 again, the September 3rd letter -- what was proposed was that
16 there would be a motion to dismiss for lack of personal
17 jurisdiction and that I believe the parties propose having that
18 motion briefed now, maybe staggered by two weeks from the
19 experts' schedule, but that that can go forward now while these
20 bellwether expert challenges are happening.
21      So, I just want to confirm that there is no reason to
22 delay that schedule as well.  Maybe Mr. Haefele can respond
23 first?
24      MR. HAEFELE:  Your Honor, this is Robert Haefele.
25      I think we agree.  We don't have any opposition to

1    that approach.
2            THE COURT:  I didn't go through close enough, I know
3    that there are certain experts that are related to DIB.  I
4    don't know whether or not those challenges would be part of
5    this bellwether challenge or whether or not those experts
6    intend to provide any testimony related to personal
7    jurisdiction but if you can just answer, Mr. Haefele, whether
8    or not you think there is any potential difficulty in
9    scheduling the DIB motion now even though there is an open
10   question on experts.
11           MR. HAEFELE:  Your Honor, I am going to answer that
12   with a question, actually, if you don't mind.  Just for
13   clarification.
14           On the first part of what your order is anticipated to
15   cover, when you say "pick three experts," that is per side,
16   correct?  In other words, the plaintiffs pick three of the
17   defense experts and the defendants collectively pick three of
18   the plaintiffs' experts; correct?
19           THE COURT:  Roughly, yes.  Yes, that's the idea.
20           MR. HAEFELE:  OK.  On the -- I'm sorry, your Honor.
21   Can you ask the question again?  I apologize.
22           THE COURT:  Sure.
23           We are going to have bellwether expert challenges
24   which I think will give the parties both a ruling on those
25   bellwether experts but also on how the case will proceed with

1  respect to expert discovery in the future.  The proposal on the
2  table is that the motion to dismiss Dubai Islamic Bank for lack
3  of personal jurisdiction also proceed largely along the same
4  schedule as those bellwether challenges would proceed.  My
5  question is whether or not -- and I think the answer is no
6  because the parties propose that they happen at the same time.
7              MR. HAEFELE:  I understand your Honor's question now
8  and your presumed answer is correct; no.
9              THE COURT:  OK.
10             Let me just ask Mr. Cottreau whether he agrees with
11 that.
12             MR. COTTREAU:  Yes, your Honor.  Dubai Islamic Bank
13 agrees with that.
14             If I can make one point, which I think was an
15 oversight by the plaintiffs in their submission to you today.
16 On page 3 of their submission, at docket 7159, they give a
17 summary of expert Jonathan Winer.  In that summary they have a
18 couple of sentences that relate to Dubai Islamic Bank on page
19 3.  It starts in the middle of that carryover paragraph:  *The*
20 *significance and import of the U.S. government's engagement*
21 *with Emirati officials concerning Dubai Islamic Bank prior to*
22 *9/11 and State Department Spokesman James Foley's statements*
23 *relating to those engagements, and the significance and the*
24 *import of the investigation and account closures described in*
25 *the testimony of Alan Fine.*  I believe that that was included

1   by plaintiffs in error.  That is not in fact, that does not

2   relate to any topic that Mr. Winer actually included in his

3   report and I think this comes out of a prior anticipated

4   summary by plaintiffs but those topics are actually not in the

5   expert reports and so you will see that the rest of their

6   summaries are largely devoid of references to Dubai Islamic

7   Bank, if not entirely devoid, and so we think, certainly,

8   personal jurisdiction can go forward while you resolve the

9   expert challenges.

10            And I just make a procedural note.  We may style the

11  motion in the alternative, as a motion for summary judgment on

12  the personal jurisdiction point.  It's a little up in the air

13  whether it should be a renewed motion to dismiss or summary

14  judgment motion.

15            THE COURT:  Great.  Thank you.

16            All right.  I think I am still going to hold off on

17  approaching Phase II until we at least move forward on Phase I.

18  I think we have covered everything that I wanted to cover.

19            Anything further that the plaintiffs want to raise in

20  connection with these issues?

21            MR. HAEFELE:  No thank you, your Honor.

22            THE COURT:  Thank you.

23            Anything further from the defendants.

24            MS. BEMBRY:  No thank you, your Honor.

25            THE COURT:  Wonderful.

1     MR. COTTREAU:  Your Honor, this is Steve Cottreau for
2  Dubai Islamic Bank.
3     I would just ask if you are contemplating the 45-day
4  schedule as I think we suggested in the letter, that the motion
5  to dismiss or motion for summary judgment on personal
6  jurisdiction trail by two weeks so we would be prepared in 60
7  days' time to go ahead and file that.
8     THE COURT:  Thank you.  Understood.
9     MR. SALERNO:  Your Honor, this is Peter Salerno.  I
10 have something I would like to say briefly, if I may?
11    THE COURT:  Yes.
12    MR. SALERNO:  There are two issues kind of buried in
13 our September 3rd letter about Mr. Kadi; one is the suggestion,
14 as is pointed out in that letter and first raised by your Honor
15 three and a half years ago in a conference involving Saudi
16 Arabia, that there be proposed findings of fact offered by
17 plaintiffs, that plaintiffs be compelled to offer them laying
18 out the facts on which they will rely.  Our theory on that is
19 that the plaintiffs -- the last complaints in the case against
20 Mr. Kadi, and I think just about anybody else, are more than 15
21 years old now.  Mr. Kadi won a motion to dismiss previously and
22 was remanded from the Second Circuit for discovery on personal
23 jurisdiction and we think we are entitled to know what the
24 plaintiffs think they've learned in those eight years of
25 discovery on personal jurisdiction.  Otherwise, a motion to

1   dismiss from us is going to be based upon 15 to 16-year-old
2   complaints.  There is no way to easily prove the negative to
3   say that nothing in the evidence that we have seen in the last
4   eight years proves anything about Mr. Kadi.  Obviously that's
5   very difficult proposition to support with evidence except
6   every document that's been produced, which is impractical.
7           So, that seems to us like a very good idea.  It seemed
8   to one of plaintiff's counsel who was there at the time to be a
9   very good idea and we just didn't want the Court to lose sight
10  of that proposal.  And it seems to us that could be done --
11  that should be done before Phase II starts, certainly.
12          The second one is there is also a brief reference and
13  we are still in discussions with plaintiff's counsel on this,
14  but we have outstanding since September 2013, eight years ago
15  tomorrow, in fact, interrogatories to the plaintiffs and I
16  think we are at the stage where plaintiffs should answer them
17  and if they agree to, we needn't bother your Honor, but if they
18  don't, then we will be.  There is another small
19  discovery/expert issue that we are in discussions with
20  plaintiff's counsel about.
21          But, other than that, those are the two things I had
22  in mind.
23          THE COURT:  Thank you.
24          With respect to the first point, I have certainly not
25  lost track of that next phase and I am deep in thought about

1   what is the best way to proceed.  And so, I am very much aware

2   that that is still an open question.  I don't think we need to

3   decide it today.  I will certainly invite comment from the

4   parties before I set any rules about how we are going proceed,

5   but I don't think we need to address that today.

6           MR. SALERNO:  Thank you, your Honor.

7           THE COURT:  With respect to the interrogatories, that

8   does seem like something that needs to be addressed.  Since you

9   are in discussions right now with plaintiff's counsel on other

10  discovery disputes, my thinking is that you should have this

11  conversation with them now and then maybe submit a letter to me

12  in the next week or two raising whatever outstanding discovery

13  disputes remain.

14          Does that make sense to you?

15          MR. SALERNO:  Absolutely, your Honor.

16          THE COURT:  Terrific.  So, I will look out for that

17  letter and if you can just file a letter, certainly within two

18  weeks from today; if there are no discovery disputes I would

19  appreciate a letter just letting me know that so we know that

20  that has been resolved.

21          MR. SALERNO:  I will do so, your Honor.

22          THE COURT:  Thank you.

23          Anything else, Mr. Salerno?

24          MR. SALERNO:  No.  I don't think so.  Thank you, your

25  Honor.

J715911c                    phone conference

1          THE COURT:  Thank you.
2          Anybody else wish to be heard?
3          MR. MOHAMMEDI:  No thank you, your Honor.
4          THE COURT:  All right.  Thank you, everybody.  I hope
5    everybody is healthy and safe.  And, we are adjourned.
6                              o0o