LASQwtcC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   IN RE:  TERRORIST ATTACKS ON
    SEPTEMBER 11, 2001
4                                       03 MD 01570 (GBD)(SN)
                                        Remote Teleconference
5   ------------------------------x
                                        New York, N.Y.
6                                       October 28, 2021
                                        4:30 p.m.
7
    Before:
8
                        HON. SARAH NETBURN
9
                                        Magistrate Judge
10
                            APPEARANCES
11
    LANKER SIFFERT & WOHL LLP
12       Attorneys for J. Fawcett
    MICHAEL GERBER
13  HELEN GREDD

14  KELLOGG HANSEN TODD FIGEL & FREDERICK PLLC
         Attorneys for Defendant Kingdom of Saudi Arabia
15  MICHAEL K. KELLOGG
    GREGORY RAPAWY
16  ANDREW SHEN

17  KIRSCH & NIEHAUS
         Attorney for Kreindler & Kreindler
18  EMILY KIRSCH

19

20

21

22

23

24

25

LASQwtcC

1              (The Court and all parties appearing via remote

2       teleconference)

3              THE COURT:  Good afternoon, everybody.  This is Judge

4       Netburn.  This case is In Re:  Terrorist Attacks of September

5       11, 2001.  The Docket No. is 03 MD 1570.

6              I know we have a number of lawyers on the line.  I

7       think for purposes of the court reporter and to facilitate the

8       transcript, let me first ask for the lawyers representing John

9       Fawcett to state their appearance.

10             MR. GERBER:  Good afternoon, your Honor.  Michael

11      Gerber and Helen Gredd from Lanker Siffert & Wohl on behalf of

12      Mr. Fawcett.

13             THE COURT:  Thank you.  And on behalf of the defendant

14      Kingdom of Saudi Arabia.

15             MR. KELLOGG:  Good afternoon, Judge Netburn.  This is

16      Michael Kellogg and my two colleagues, Gregory Rapawy and

17      Andrew Shen are with me.

18             THE COURT:  Thank you.  As I indicated, I know that

19      there are a number of people on the line.  I don't know if

20      anybody else intends to speak, and if so, if they'd like to

21      make an appearance.  I know we have Emily Kirsch on the line

22      for Kreindler & Kreindler.

23             MS. KIRSCH:  Yes, your Honor, I'm here.  I don't

24      intend to speak but perhaps should just enter an appearance.

25             THE COURT:  Very well.  Any other lawyers wish to

LASQwtcC

1    enter an appearance now?  And if not, if those lawyers choose

2    to speak later, they can enter an appearance at that time.

3           Hearing none, we are here on the question of

4    Mr. Fawcett's Fifth Amendment privilege.  I've reviewed four

5    letters:  A letter from the defendants Saudi Arabia filed on

6    October 22 and a response letter filed on October 25.  And then

7    I received a letter on October 27 from Mr. Fawcett's lawyer in

8    connection with a D.C. District Court case that they wanted me

9    to read, which I have; and then a responsive letter -- I should

10   say not a responsive letter -- a different letter filed by the

11   kingdom on October 28.  I believe I have all of the information

12   that is before me.

13          Why don't I begin by turning to Mr. Gerber, since it's

14   your client who has submitted these declarations and who is now

15   seeking to assert his Fifth Amendment rights.

16          MR. GERBER:  Thank you, your Honor.

17          There is no dispute that *Klein* is the operative test

18   here.  As we understand it, there's no dispute that there are

19   two parts to that test, to the *Klein* test:  Whether there will

20   be prejudice to a party and whether the witness had reason to

21   know that his prior statements would constitute a waiver.  Both

22   prongs would yield the same result.  There was no waiver, and

23   Mr. Fawcett should be permitted to exercise his Fifth Amendment

24   right against self-incrimination.

25          With the Court's permission, I'm going to take up each

LASQwtcC

of those prongs in turn.  As to the first prong, *Klein* makes

clear that waiver should be inferred only in the most

compelling of circumstances, and critically, crucially *Klein*

explains, *Klein* holds that such circumstances do not exist

unless a failure to find a waiver would prejudice a party to

the litigation.  And *Hutton* makes the same point, the exact

same point.  The question is whether the fact finder might rely

on the prior statements to the detriment of a party to the

lawsuit.

And here, as we say in our letter, the Court can

strike portions of the affidavit so the parties are no worse

off than if Mr. Fawcett had never filed his declarations.

Mr. Fawcett is not asking the Court to strike his admissions

regarding his own conduct.  That is what it is.  But by

striking those portions of a declaration that arguably benefit

a party, the Court can ensure that there is no prejudice here.

And that is exactly the approach that the Court took in the

*Vitamins Antitrust Litigation* case.  That's what happened in

*E.F. Hutton*.  That's what happened in the *Candor* case.  In each

of those cases, the Court as fact finder did not consider

certain factual representations and so was able to avoid a

finding of waiver.  And that is what --

THE COURT:  As I understand it, the Court chose to

disregard the statements because it could reach a conclusion

that was fair and appropriate without consideration.  For

LASQwtcC

example, in the *E.F. Hutton* case, I understand it had to do
with the timeliness, and so the Court can disregard the
statements without having to reach it and still make its
ruling.  Whereas here, what you're asking the Court to do is to
make findings of fact with only half of the information to rely
on your client's incriminating statement that he stands by, but
not to have the benefit of questioning of those positions that
he submitted if his sworn statements.

MR. GERBER:  Well, your Honor, a few points on that.
I mean, first, in any situation, in any situation in which a
court is applying the first prong of the *Klein* test, that issue
arises.  What I mean is, by the very nature of the inquiry and
the question of whether or not there would be prejudice, the
question is will there be prejudice in the absence of an
opportunity to cross-examine regarding certain factual
assertions.

So, that is in some sense, your Honor, a play in every
single case where this issue arises, in every single situation
in which a court is considering the first prong of *Klein*.  So,
to the extent that there is a concern that there is prejudice
in the sense that there is a missed opportunity to
cross-examine regarding certain factual assertions, your Honor,
that's true in sometimes every *Klein* situation, and that can't
be the type of prejudice that *Klein* is talking about, because
if it were, that would sort of collapse the first prong of the

LASQwtcC

1    *Klein* test.

2              What *Klein* seems to be saying -- and *E.F. Hutton* makes

3    this clear, written by the same judge in the same period of

4    time -- is, is there a way to sort of restore the parties to

5    where they would have been ex ante so that there isn't

6    prejudice.  And that's the prejudice question; not whether

7    there's a missed opportunity for cross-examination regarding

8    certain factual assertions, but whether in the absence of the

9    Court considering -- the Court as fact finder considering

10   certain assertions, a party is somehow prejudiced.

11             And, your Honor, in all of those cases, whether it's

12   *Hutton* or *Candor* or *Vitamins Antitrust Litigation*, the Court

13   was giving up consideration of certain factual assertions in

14   those documents and then relying on whatever other evidence it

15   was going to rely on.  And it will vary, of course, from case

16   to case.  Here, the Court is in a position to do extensive fact

17   finding and will be able to reach and can make factual findings

18   and conclusions without those portions of the Fawcett

19   affidavit.

20             THE COURT:  Doesn't the prejudice prong really talk

21   about distorted facts and whether or not the Court is left with

22   distorted facts as a result of your client starting to speak

23   and then stopping to speak?

24             MR. GERBER:  Your Honor, again, if -- to the extent

25   the concerns of the Court is -- a court or a party or fact

LASQwtcC

1    finder is losing the opportunity to cross-examine regarding

2    certain statements, that will come up in every case.  In any

3    situation in which you're assessing prejudice under *Klein*,

4    there will always be a missed opportunity for

5    cross-examination.  That's the very nature of the Fifth

6    Amendment.  The Fifth Amendment at its core does stand in the

7    way of additional fact-finding.  That is a hundred percent

8    true.  That is in the very nature of the right.

9            And what the Second Circuit is saying in *Klein* is that

10    right is so important, that a court should only find that

11    waiver if in the absence of doing that the fact finder is left

12    with facts that prejudice one party or the other.  And here,

13    here the court as fact finder will not be left in a situation

14    in which it is relying on facts that prejudice a party.  It

15    will have Mr. Fawcett's admissions, and otherwise neither party

16    is worse off, and the Court can make its factual findings and

17    factual inquiries, while crucially at the same time not finding

18    a waiver which the Second Circuit has said should be done only

19    in the most compelling of circumstances.  And we respectfully

20    submit you don't have those --

21            THE COURT:  Right.  So, if you're saying that I can't

22    consider as prejudice the fact that we're left with an

23    incomplete record, and we miss the opportunity to cross-examine

24    your client on core issues to which he has already admitted to,

25    when is there prejudice?  If that can't be prejudice, when

1    would there be prejudice?

2              MR. GERBER:  Yes, your Honor.  So, I think there are a

3    lot of situations where there would be prejudice.  For example,

4    in the trial context this comes up with great frequency and

5    there are cases that that affect*.  Klein* is a great example of

6    that where the jury as fact finder was left with a distorted

7    factual record.

8              There are numerous cases where a party to a litigation

9    has taken a particular position, has benefited from that

10   position, for example, to decline to answer certain questions

11   in a deposition, to prevail on summary judgment, whatever

12   tactical advantage a party has gained, and then there's

13   prejudice.  So whether it's in the trial context with a jury as

14   fact finder, whether it's in any case where a party has gotten

15   some benefit from its assertions, there there is prejudice, and

16   consistent with *Klein* the Court would find or could certainly

17   find waiver.

18             Here, your Honor, we are in a situation in which if

19   the Court is fact finder, so you don't have that same concern

20   about the fact finder sort of having a distorted -- relying on

21   partial facts, and that's (inaudible) the *Vitamin Antitrust*

22   *Litigation* according to the Supreme Court in *Gentile* makes that

23   exact point.

24             And you also don't have the cases -- and we talk about

25   this in our letter, your Honor.  You don't have the scenarios

LASQwtcC

1    as recited in the cases relied upon by Saudi Arabia where a

2    party has benefited, and then having benefited, wants to have

3    its cake and eat it too.  That's not the scenario that you have

4    here.

5         If your Honor does not have questions on the first

6    prong, I was going to turn to the second prong; and that is,

7    was Mr. Fawcett on notice that he was waiving.  And we submit

8    that Judge Cote's recent decision in *Knopf* is critical here.

9    Judge Cote makes the point citing the Second Circuit in *Miranti*

10   that even within the same proceeding "a prior disclosure may

11   not constitute a waiver when conditions have changed that

12   create new grounds for apprehension."  And that's Judge Cote

13   earlier this year relying on Second Circuit in *Miranti*.  The

14   Supreme Court in *Mitchell* essentially makes the same point,

15   and, your Honor, we respectfully submit that that's this case.

16        The Court on October 4 ordered an evidentiary hearing

17   and gave notice that it was considering a criminal referral to

18   the U.S. Attorney's Office for the Southern District of New

19   York, and if that doesn't create new grounds for apprehension,

20   I'm not sure what does; the product of a criminal referral --

21        THE COURT:  Sorry.  But that's not a condition that's

22   changed.  In the cases that you rely upon, there are factual

23   developments, there's a change of law, there's significant time

24   changes.  Here, the conditions did not change.  I merely stated

25   what I think would be obvious to most people, particularly

LASQwtcC

following a nearly two-month lead-up that violating a court

order can hold you in criminal contempt of courts.  That's not

a condition that's changed.  It's merely a statement of what I

think would be obvious to anyone who's filing a declaration

under penalty of perjury.  So I'm not sure it's correct to say

that the conditions have changed because I heeded what I think

would be obvious to all, particularly given the intense focus

of this leak investigation.

MR. GERBER:  Your Honor, of course we appreciate both

the lead-up and obviously we appreciate the significance of

anyone submitting something to a court particularly under

penalty of perjury, but, your Honor, we would submit that what

the Court just said might well be obvious to an attorney, I

actually don't think it would be obvious to a non-lawyer.

Obviously, it would be clear and it's clear, frankly, from the

terms of the protective order, that sanctions could follow,

incredibly significant sanctions could follow; but the fact

that in a civil case the Court would be potentially referring

an individual for criminal prosecution, I actually don't think

that that would be obvious to a non-attorney, to a non-lawyer,

and I think the phrasing is important:  Grounds for

apprehension.  It's not just about changed facts.  It's is the

witness sort of in a newly situated position where he has

reason to fear the consequences of his statements in a way that

was not true before.

LASQwtcC

1          Again, your Honor, I'm in no way minimizing the

2   significance of any situation putting in a sworn statement to a

3   Court.  But that said, I do think, particularly for a

4   non-lawyer, there is a difference, I think essentially a big

5   one, between submitting a document in a civil action and being

6   told that a criminal referral to the U.S. Attorney's Office is

7   in contemplation.

8          And that brings me to my final point, and that is,

9   this is a very unusual situation.  Mr. Fawcett is being

10  directed to testify before the Court regarding the subject

11  matter of a potential criminal referral by the Court.  He is in

12  a very real direct palpable sense being called as a witness

13  against himself, and he wishes to exercise his constitutional

14  right not to be a witness against himself, and we respectfully

15  submit that he should be permitted to exercise that right.

16          Thank you.

17          THE COURT:  Can I ask a followup question on that last

18  point, which is, as I understand your position, he is standing

19  by his incriminating statement; and so to the extent he wishes

20  to not be a witness against himself, presumably that would be

21  for some other possible crime than the violation of the court

22  order that he's admitted to.

23          MR. GERBER:  Your Honor, I think I understand the

24  question, but I want to make sure.  Your Honor, our position is

25  that he has not waived, and having not waived, he would not

LASQwtcC

1    want to give additional evidence, in this case sworn testimony,

2    regarding the matters addressed in the declaration.  Those

3    sworn statements would put him in legal jeopardy.  And, yes,

4    he's not asking the Court to strike the admissions regarding

5    his own conduct.  Your Honor, I think there's no question that

6    testifying regarding those matters would have a potentially

7    very significant impact on his jeopardy, sort of (inaudible)

8    the evidence against him.  And in the absence of waiver, he

9    would exercise his Fifth Amendment privilege against

10   self-incrimination.

11            THE COURT:  All right.  Thank you.

12            Mr. Kellogg, are you going to take the lead on behalf

13   of the Kingdom?

14            MR. KELLOGG:  I am, your Honor.

15            And I would like to start, if I may, with a quote from

16   the Supreme Court's decision in *Mitchell v. United States*.  "it

17   is well-established that a witness may not testify voluntarily

18   about a subject and then invoke the privilege against

19   self-incrimination when questioned about the details."  The

20   Supreme Court has said that many times.  The Second Circuit has

21   said the same in *Klein v. Harris*, as has this court in *OS*

22   *Recovery*.  The privilege against self-incrimination has to be

23   asserted when the witness first faces the decision whether to

24   give self-incriminating testimony.  John Fawcett made that

25   decision on September 27, 2021 and then again on September 30,

LASQwtcC

1    2021 when he signed declarations confessing to violating this

2    Court's protective order and destroying evidence that he did

3    so.

4         Now, having decided to incriminate himself, he cannot

5    take back that decision and assert the privilege to prevent

6    cross-examination on the statements he chose to make in those

7    declarations; otherwise, witnesses could distort the truth by

8    testifying to some facts, denying or withholding others and

9    asserting a privilege to bar cross-examination that would

10   reveal the whole truth.

11        As this Court explained in *OS Recovery*, "This would

12   make a mockery of the Fifth Amendment and frustrate efforts to

13   achieve a just result."  It is precisely what Mr. Gerber is

14   proposing here.

15        Now, as you noted, the parties agree on the legal

16   standard for a Fifth Amendment waiver.  It's the two-prong test

17   set out in *Klein v. Harris*, and we also rely on Judge Kaplan's

18   decision in *OS Recovery*.  If I may, I'd like to start with the

19   second prong which asks "whether the witness had reason to know

20   that his prior statements would be interpreted as a waiver of

21   the Fifth Amendment's privilege against self-incrimination."

22   This is called the reason to know prong, and Mr. Fawcett's

23   declaration easily meets it because they disclose an

24   intentional violation of the Court's protective order, as well

25   as the destruction of evidence.

LASQwtcC

1          Now, Judge Kaplan in *OS Recovery* explained that the

2     reason to know standard requires:  First, that the statements

3     be testimonial; meaning, that they were made voluntarily under

4     oath in the same judicial proceeding.  And, second, that the

5     statements be incriminating; meaning, that they directly

6     inculpate the witness on the charges at issue.  Both of those

7     requirements are satisfied here.  Fawcett made his statements

8     voluntarily in sworn affidavits, and they could not have been

9     more incriminating.

10         Now, counsel's suggestion that Mr. Fawcett did not

11     anticipate the legal peril that he currently faces is baseless

12     He knew the materials he sent to Mike Isikoff were subject to

13     protective orders.  He took great steps to hide his wrongdoing.

14     He destroyed evidence.  Of course, he was anticipating exactly

15     the peril that he faces now.  Now, his counsel says -- or in a

16     prior letter, at least, said there is no suggestion in the

17     record that Mr. Fawcett received any guidance that would have

18     led him to believe that by submitting the declarations he would

19     be subjecting himself to cross-examination for the purpose of

20     determining whether he should be criminally charged.

21         Now, note, that statement is very carefully worded.

22     No suggestion in the record -- and that may have been true at

23     the time, but as we explained in a sealed letter filed with the

24     Court today, that carefully worded denial was, at best,

25     misleading.  And in any event, as we explained in our letter,

LASQwtcC

when the case is cited at page 5 "whether or not he had the

advice counsel is not an issue when he decided to submit the

declarations is not relevant to the waiver inquiry."

I'd like to just briefly dismiss this point that

relying on *Knopf*, that this is not a separate action. *Knopf*

involved clearly separate actions. In fact, I will quote from

Judge Cote's opinion*: "Phillips* and *Esposito* are separate

actions alleging distinct claims against different defendants."

Here, the Court started an inquiry into who leaked the

documents to Michael Esposito. The same proceeding is now

going on. Mr. Fawcett submitted his declarations in an early

portion of that, and the same inquiry is still going to

continue on Monday. So the second prong seems to me easily

met.

So let's focus on the first prong, which asks whether

the partial testimony creates a significant likelihood that the

finder of fact will be left with and prone to rely on a

distorted view of the truth. Your Honor is quite correct in

focusing on that language, and Mr. Fawcett's declaration meets

that prong. Although he purports to accept responsibility for

his actions, at the same time, he gives a self-serving account

designed to mitigate his own culpability and to protect his

long-time employers by claiming that he acted without their

authorization or knowledge.

We have a right to cross-examine him on those

LASQwtcC

1    statements, and we expect cross-examination at the hearing next

2    week will explore and reveal a number of false statements and

3    omissions in Mr. Fawcett's testimony, declarations which would

4    otherwise leave the Court with a distorted picture.  To give

5    just a few examples:

6         The September 27 declaration states that the

7    transcript portions Mr. Fawcett's sent to Mr. Isikoff were

8    focused on a particular topic.  Cross-examination will explore

9    that claim and present good grounds for believing it's not

10   true.

11        The September 30 declaration describes a limited

12   number of communications that Mr. Fawcett had with Mr. Isikoff.

13   Cross-examination will explore material omissions in that

14   admission.

15        Both declarations his describe Mr. Fawcett's motives

16   in sending the transcript as a means of minimizing his

17   culpability.  Cross-examination will explore the validity of

18   those explanations.

19        And, of course, both declarations minimize

20   Mr. Fawcett's relationship with Kreindler & Kreindler,

21   referring to himself as a consultant with no contract.

22   Cross-examination will explore Mr. Fawcett's close and

23   long-term relation with the firm.

24        Finally, both declarations state that Mr. Fawcett

25   concealed his actions from Kreindler & Kreindler.

1   Cross-examination will explore whether the facts suggest that

2   the firm knew or should have known of his actions.

3         And these points aren't just relevant to Mr. Fawcett's

4   own responsibility.  They also go to the actions of Kreindler &

5   Kreindler and the attorneys at Kreindler & Kreindler who

6   submitted Mr. Fawcett's declaration, to determine whether they

7   participated in or had knowledge of the leak, and whether they

8   made false statements to the Court about the leak or about

9   their own investigation.  Without cross-examination, the Court

10  will undoubtedly be left with a distorted account.

11        Now, Mr. Fawcett claims that there will be no risk of

12  prejudice to Saudi Arabia because the Court can simply strike

13  the parts of the declaration that Saudi Arabia disagrees with,

14  and that that would eliminate the prejudice so that he doesn't

15  have to answer questions.  Now, we are not aware, and

16  Mr. Gerber cites no decision that has surgically edited a

17  declaration in this way.  All of Mr. Fawcett's cases -- *E.F.*

18  *Hutton*, *Candor Diamond*, *Vitamins* -- they involve situations in

19  the courts.  The Court can strike or disregard the affidavit or

20  offending declaration entirely and resolve the pending issue or

21  motion or dispute without it and without any harm to integrity

22  of this process.

23        They basically held -- and this is what the first

24  prong is looking for -- that they were essentially irrelevant

25  to the ultimate decision in the case and, therefore, did not

LASQwtcC

1     prejudice.  That isn't a viable solution here.  It would make a

2     mockery of the Court's investigation to strike the declarations

3     completely and pretend that Fawcett did not already confess to

4     leaking the transcript.  Even Fawcett understands that.  So

5     he's not proposing that the depositions be struck.  Instead, he

6     suggests that the Court go through and remove only the portions

7     of the declaration that Fawcett no longer wants to address,

8     such as his motivation in sending the transcript to Isikoff,

9     how much of the transcript he sent, and his claims about what

10     Kreindler & Kreindler knew and when they'd do it.

11          But that would achieve the very thing that the Supreme

12     Court said in *Rogers* and the Second Circuit said in *Klein* is

13     prohibited:  "Opening the way to distortion of facts by

14     permitting a witness to select any stopping place in his

15     testimony."  That's exactly what he wants to do.  He wants to

16     say, okay, well, I admitted to bake things, but I don't want

17     you to question me about any of the details.  And these

18     declarations will necessarily be at the center of the hearing

19     next week, which was called for the purpose of finding facts

20     related to the jurat transcript.  Fawcett cannot say "never

21     mind" with respect to any portions of his declarations he

22     doesn't want to be questioned about.

23          As Learned Hand said in *St. Pierre*:  "The time for a

24     witness to protect himself is when the decision is first

25     presented to him.  Anything more puts a mischievous instrument

LASQwtcC

at his disposal." By choosing to testify, a witness gives up his rights to refuse to answer questions within the proper scope of cross-examination.

I can cite 50 cases on that point. Mr. Gerber cannot cite a single would be.

Now, Mr. Gerber also argues that Fawcett cannot have waived his Fifth Amendment right because he was a non-party witness and was not acting for strategic advantage. He argues that in his letter, and that is triply wrong.

First, Fawcett was indeed acting for strategic advantage. Not only did he seek to minimize the significance of his actions in his declarations, but he also tried to protect the Kreindler firm from consequences, whether on his own initiative or at the attorney's urging. Now, that may have been a bad strategy for him personally. Perhaps he now regrets it, but it is certainly a strategy, and it's not credible for him to pose now as a disinterested non-party. Indeed, he's not a non-party. He's the subject of the Court's investigation, even if not a party to the underlying litigation.

And the third thing wrong with that is there is no requirement in a case law that a witness be a party or act strategically to waive Fifth Amendment rights.

The final point Fawcett argues is that it would be fundamentally unfair to find a waiver analysis because he wasn't expecting that. Again, that's not a legitimate

LASQwtcC

1    argument.  By choosing to testify Fawcett gave up his right to

2    refuse to testify on the details of his declaration.  As the

3    Court made clear in *Spinelli*, there is no fairness requirement

4    on a Fifth Amendment waiver.  And, if anything, Mr. Fawcett,

5    who has worked as a legal investigator for 20 years, was better

6    able to understand the legal system and the consequences of his

7    admissions than many witnesses faced with similar choices.

8            So, in sum, he has waived his Fifth Amendment

9    privilege as to questions concerning the subject of his

10   declarations.  The waiver extends to any questions that fall

11   within the proper scope of cross-examination on his

12   declaration.  Every court has so held -- *Mitchell*, *Spinelli*, *OS*

13   *Recovery* -- every court to reach this question has held it's

14   proper to cross-examine on the subject matter of the

15   declaration.  And to the extent that we exceed those limits and

16   ask him about something that's not within the scope of his

17   declaration, which we will try not to do, the Court can make a

18   determination at the hearing on that on a question-by-question

19   basis.

20           Unless the Court has --

21           THE COURT:  Mr. Kellogg, can you address the arguments

22   that Mr. Gerber raised with respect to the changed

23   circumstances, and whether or not the Court should see the

24   October 4 as a change in circumstances such that Mr. Fawcett

25   would have new apprehension at that moment that he might not

LASQwtcC

1    have had previously.

2    MR. KELLOGG:  Yes, your Honor, I'd be happy to address

3    that because the case law is clear that you don't have to know

4    that you're going to be criminally charged or likely to be

5    criminally charged.  All you have to know is that the

6    statements are incriminating; meaning, as Judge Kaplan

7    explained in *OS Recovery*, that they directly inculpate the

8    witness on the charges at issue here, which would be violation

9    of the protective order and destruction of evidence.

10    The case law is also clear you don't have to have

11    legal advice on that.  You can't claim surprise afterwards.

12    Indeed, the Supreme Court, as we cite in page 5 in our letter,

13    says that even a criminal defendant who inculpates himself

14    doesn't have a right to an attorney before that.  The Sixth

15    Amendment right attends only after he's been arrested, and

16    statements that he makes can be used against him.  That's in

17    the criminal context.

18    In the civil context, statements made that clearly

19    create legal jeopardy, which Mr. Fawcett with his long

20    experience in this case would understand, are sufficient, and

21    it's not a new proceeding as of October 4 when the Court issued

22    its order.  It's the same proceeding following up on the

23    statements that Mr. Foster made in determining whether and to

24    what extent those statements can be taken at full value or

25    whether he has distorted some things in the course of making

LASQwtcC

1    his admissions.

2            THE COURT:  Thank you.

3            Mr. Gerber, anything you'd like to say?

4            MR. GERBER:  Yes.  Thank you, your Honor.  A few brief

5    points in response.

6            So, first, starting where Mr. Kellogg just left off on

7    the second prong, it is true, the law is clear -- and we are

8    not saying anything to the contrary -- that you do not have to

9    know that you're going to be criminally charged to effectuate a

10   waiver.  That is, of course, true, but that's a separate

11   question from whether there are new grounds for apprehension.

12   And the law is clear that when you have a new proceeding, a

13   different proceeding, a waiver in a prior proceeding does not

14   sort of carry over to the new proceeding.  The reason for that

15   rule, for that bright-line rule is this idea of new grounds of

16   apprehension and a new proceeding.  And Judge Cote's point in

17   *Knopf* is that you can have new grounds of apprehension even

18   within something that otherwise is the same proceeding.

19           And again, we submit that in a civil case, a hearing

20   in contemplation of a criminal referral is precisely that type

21   of new grounds for apprehension within what otherwise would be

22   the same proceeding.  It does fundamentally change things, and

23   that's the idea of that line of cases.

24           Now, with regard to prong two, at one point

25   Mr. Kellogg said that a statement of ours in one of our letters

LASQwtcC

was, at best, misleading.  I want to be very clear, your Honor,

there was absolutely no intent whatsoever to give an incorrect

impression to the Court or to the parties.  Saudi Arabia's

letter of today was submitted based on information that we

provided to them.  We were not suggesting -- we did not say

that Mr. Fawcett did not have access to counsel prior to

October 4.  That is not the argument we're making to the Court.

          What we were arguing, what we argued today, is that

the second prong of the *Klein* test is not satisfied because the

Court's October 4 order created new grounds for apprehension.

It was in this context that we noted there was no indication

that prior to October 4 Mr. Fawcett understood he would be

facing the prospect of a criminal referral.

          On the first prong I just want to make the point again

that the benefit of cross-examination, testing of statements to

show information about statements, that can't be the prejudice

test under *Klein* because if that were the test, it's hard to

imagine when that test would not be satisfied.  And for the

prejudice prong to mean something, the question becomes:  Could

a fact finder disregard certain statements and still be fair to

the parties?  We think that is the case here.

          And I also just want to say, I think these

declarations do not mitigate Mr. Fawcett's culpability.

Whatever else can be said about them, they put him in

significant jeopardy, and this is not a situation, not even

LASQwtcC

```
 1    close to a situation, where a party to a litigation is trying
 2    to gain some strategic or tactical advantage.  Quite the
 3    opposite, really 180 degrees.  Mr. Fawcett by putting in these
 4    declarations did not gain; he put himself in incredibly
 5    vulnerable position.  Thank you, your Honor.
 6             THE COURT:  Thank you.
 7             MR. KELLOGG:  Your Honor, may I make one very brief
 8    point in response to the new grounds for apprehension language?
 9             THE COURT:  Yes.
10             MR. KELLOGG:  There is not a line of cases on this
11    issue.  The first one is Miranti which involved a grand jury
12    proceeding that was still ongoing, in which the defendant had
13    made admissions to the FBI and been already convicted of
14    conspiracy, but the statute of limitations had not yet run on
15    various substantive crimes, and they wanted to compel him to
16    testify about those crimes before the grand jury, which is a
17    very different situation here.
18             And then as I pointed out, in Knopf, Judge Cote did
19    use that new grounds for apprehension language but, again, held
20    these were separate actions alleging distinct claims; not a
21    single inquiry into a violation of protective order and the
22    destruction of evidence.
23             THE COURT:  Thank you.
24             MR. GERBER:  Your Honor, if I may just for one moment?
25             THE COURT:  Sure.
```

LASQwtcC

1          MR. GERBER:  Just to follow up on the point about

2     *Miranti*, if the same grand jury, the exact same grand jury, and

3     there the individual had previously testified before that grand

4     jury, putting himself in epic legal jeopardy, he actually had

5     been prosecuted and convicted.  Now in that case fast forward.

6     He's going before that grand jury again, the same grand jury

7     before which he testified regarding his criminal conduct, and

8     the Second Circuit says no.  Even though it's the same grand

9     jury, even though you have the prior testimony, we are not

10    going to find a waiver, and so I think for *Miranti* and then

11    *Knopf*, when Judge Cote is applying that concept to a single

12    proceeding, I think that precise logic applies here.

13          THE COURT:  Thank you all.  I appreciate everybody's

14    time and arguments.  I am prepared to rule from the bench, in

15    part because I recognize that it's Thursday evening and our

16    hearing is Monday, so I want to give the parties some clarity.

17          Obviously, everybody agrees on the standard here and I

18    am just looking at *Klein v. Harris*.

19          Can I ask everybody to mute their line?  I'm getting

20    some feedback.  Thank you.

21          So, everybody agrees that we're looking at the same

22    standards here, *Klein v. Harris*.  For the court reporter

23    benefit, that's 667 F.2d 274.  It's a Second Circuit decision

24    from 1981, and it's a two-prong test -- we've been talking a

25    lot about it tonight -- the first prong being whether or not

LASQwtcC

1    the witness's statement create a significant likelihood that

2    the fact finder will be left with a distorted view of the

3    facts.

4         And I recognize that waiver should only be found under

5    the most compelling circumstances, and that there's a

6    presumption that the right should attach.  I think here, under

7    these facts, that the Court would be left with distorted facts,

8    specifically related to the extent to which Mr. Fawcett acted

9    alone, as well as for the reasons for his actions.  And I find

10   that that would be sufficiently prejudicial.  I think the case

11   law here is quite clear, and Mr. Kellogg cited a number of the

12   same cases that I have been looking at; that a witness is not

13   permitted to begin to speak and then to stop speaking when he

14   so chooses.  I'm looking at the decision *U.S. v. St. Pierre* as

15   well as *Rogers v. The United States*.

16        I think if we allowed Mr. Fawcett to at this stage

17   stand by his incriminating statements but otherwise assert his

18   Fifth Amendment rights, the Court would absolutely be left with

19   distorted facts.

20        The cases that Mr. Fawcett relies on -- *E.F. Hutton*

21   and the *Vitamins* case out of the D.C. District Court -- I don't

22   believe that those cases apply.  Those cases considered whether

23   or not a court could simply excise an entire statement and

24   reach its conclusions without referencing to the witnesses'

25   statements.

LASQwtcC

1          For one, as we've been discussing, that's not even

2     what's being proposed here.  What's being proposed is some sort

3     of melange, where we consider some of his statements but not

4     others.  But there's no way for the Court to reach its ultimate

5     conclusion, which is the purpose of this hearing on Monday,

6     without being left with distorted facts if we weren't allowed

7     to question Mr. Fawcett about his prior statements that he

8     submitted to under oath.  So I find that the first prong of the

9     *Klein* test is satisfied.

10          With respect to the second prong which we've been

11     discussing as the sort of reason to know case, there's two

12     parts to that second prong, and everybody seems to agree that

13     his first statements were testimonial.  They were made

14     voluntarily, and they were certainly under oath.  I understand

15     Mr. Fawcett argues that we are in a different proceeding now

16     that we're scheduling a hearing for the possibility of the

17     Court making a referral to the U.S. Attorney's Office.  So,

18     like I said, everybody agrees that these were voluntary

19     statements made under oath.  They are in my view entirely of

20     the same proceeding, and I don't believe that the *Knopf* case is

21     similar.

22          This issue has been before the Court since roughly the

23     end of July.  We have been having extensive proceedings related

24     to this breach.  The hearing is simply the next step in that

25     process, and to conclude that once the Court announced the

LASQwtcC

1    hearing would be held and the possible remedies that were

2    available to the Court -- remedies which were obvious and known

3    to anyone, including Mr. Fawcett -- I don't believe that puts

4    us into a new proceeding here.  So I find that that first part

5    of the *Klein* test is satisfied.

6              And certainly the second part is as well.  The

7    statement was incriminating, and, as I understand, Mr. Fawcett

8    stands by it.  It relates directly to the issue that is the

9    focus of our hearing, and I don't think that there is any

10   plausible argument that Mr. Fawcett did not understand that

11   when he admitted to violating a Court order, particularly after

12   the intensive focus the Court has had on this issue, and

13   additionally admitted to all of his actions to hide that from

14   the Court, and then the fact that he destroyed the evidence in

15   furtherance of his goals, I don't believe we can argue in good

16   faith that he has new apprehension that he did not understand.

17   In fact, the evidence suggests that Mr. Fawcett fully knew the

18   nature of his conduct and the consequences, and in fact he

19   acted consistent with that by trying to hide it from the Court

20   and potentially from his employer.  So, I find that under the

21   *Klein* test, both elements are met for waiver, and I will

22   require Mr. Fawcett to testify and answer questions at the

23   hearing on Monday.

24             To the extent that there are questions that may enter

25   into other areas that may create other liability for

LASQwtcC

1    Mr. Fawcett, I can deal with those objections on a

2    question-by-question basis, but otherwise I expect Mr. Fawcett

3    to appear and answer questions on Monday.

4            And that is my ruling.  All right.  Well, I will see

5    everybody on Monday.

6            MR. GERBER:  Your Honor?  I'm sorry, if I may, just

7    two very quick points?

8            THE COURT:  Yes.

9            MR. GERBER:  If I may?

10           Just first, just for the record, we do not dispute

11   that the declarations describe a violation of the Court order,

12   but I do want to be clear that we are not conceding criminal

13   conduct.  The Court used the word incriminating.  I just --

14   again, violating a court order puts him in jeopardy, but we are

15   not conceding on behalf of our client that the statements are

16   incriminating full stop.  We are not conceding that, your

17   Honor.

18           THE COURT:  Of course not.  And as I've indicated,

19   after the hearing, I anticipate the parties will file proposed

20   findings of fact and conclusions of law, and it will be an

21   opportunity for you to make that point again.

22           MR. GERBER:  Yes, your Honor.  The other point is we

23   would like an opportunity to be heard before Judge Daniels.  We

24   intend to write to Judge Daniels this evening to ask to be

25   heard in this matter.  Would the Court stay its order solely so

LASQwtcC

```
 1    that we can have the opportunity to raise this issue before
 2    Judge Daniels?
 3            THE COURT:  I don't really know what a stay of the
 4    order means.  We have the hearing scheduled on Monday.  In
 5    light of COVID, among other things, scheduling that conference
 6    was a Herculean effort, so I was sensitive to the possibility
 7    that you may seek an appeal, which is, in part, why I was
 8    prepared to rule today.  We've addressed this motion as quickly
 9    as we could.  So my recommendation is that you make your
10    application as soon as possible.  We will facilitate it by
11    simply letting his law clerk know that this is coming, and
12    hopefully it can be heard tomorrow, but I'm not inclined to
13    reschedule Monday's conference.
14            MR. GERBER:  Understood.  Thank you, your Honor.
15            THE COURT:  All right.  Anything further?
16            Hearing nothing, I will see you all on Monday.  Thank
17    you everybody.  We're adjourned.
18            MR. KELLOGG:  Thank you, your Honor.
19            MR. GERBER:  Thank you, your Honor.
20            (Adjourned)
21
22
23
24
25
```