N4BDWTCC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   In re Terrorist Attacks on          03 MD 1570(GBD)(SN)
    September 11, 2001
4
    ------------------------------x
5
                                        New York, N.Y.
6                                       April 11, 2023
                                        3:00 p.m.
7
    Before:
8
                        HON. SARAH NETBURN,
9
                                        U.S. Magistrate Judge
10
                            APPEARANCES
11
    COZEN O'CONNOR
12       Attorneys for Federal Insurance Plaintiffs
    BY:  SEAN P. CARTER
13
    KREINDLER & KREINDLER LLP
14       Attorneys for Plaintiffs
    BY:  STEVEN R. POUNIAN
15
    MOTLEY RICE LLC
16       Attorneys for Plaintiffs
    BY:  ROBERT T. HAEFELE
17       DONALD A. MIGLIORI

18  ANDERSON KILL
         Attorneys for Plaintiffs
19  BY:  JERRY S. GOLDMAN

20  MOLOLAMKEN LLP
         Attorneys for Dallah Avco Trans Arabia Co.
21  BY:  ROBERT K. KRY
         ERIC R. NITZ
22
    KELLOGG, HANSEN, TODD, FIGEL & FREDERICK PLLC
23     Attorneys for Defendant The Kingdom of Saudi Arabia
    BY:  GREGORY G. RAPAWY
24       ANDREW C. SHEN

25

N4BDWTCC

```
1            (In open court)

2            THE DEPUTY CLERK:  Your Honor, this is the matter of

3    In Re: Terrorist Attacks on September 11, 2001, Case No. 03 MD

4    01570.

5            Starting with counsel for the Ashton plaintiffs,

6    please state your appearance for the record.

7            MR. POUNIAN:  Steven Pounian.

8            THE DEPUTY CLERK:  Thank you.

9            And on behalf of the Plaintiff's Executive Committee?

10           MR. CARTER:  Good afternoon, your Honor.  Sean Carter

11   from Cozen O'Connor on behalf of the PEC.

12           MR. HAEFELE:  Good afternoon, your Honor.  Michael

13   Haefele from Motley Rice, and I have with me Donald Migliori,

14   also for the Plaintiffs' Executive Committee, both from Motley

15   Rice.

16           MR. GOLDMAN:  Jerry Goldman from Anderson Kill.

17           THE COURT:  Thank you.

18           Does anyone else for the PEC want to state their

19   appearance for the record?

20           For the Kingdom?

21           MR. RAPAWY:  Good afternoon, your Honor.  Gregory

22   Rapawy of Kellogg, Hansen for the Kingdom of Saudi Arabia, and

23   with me is my colleague Andrew Shen.

24           THE COURT:  Thank you.

25           And on behalf of Dallah Avco?
```

N4BDWTCC

1          MR. NITZ:  Good afternoon, your Honor.  Eric Nitz from

2     MoloLamken.  With me is Robert Kry, also from MoloLamken.

3          THE COURT:  Thank you.

4          Anyone else wish to state your appearance for the

5     record?  Great.

6          Thank you all for being here.  Thank you to the

7     families who are here, and I know we have a number of them

8     calling in as well, so I appreciate your appearance.

9          The purpose of today's conference is ordinarily a

10    really mundane topic, which is things like page limits.  I have

11    spent a fair amount of time thinking about the most effective

12    way to get these issues presented to the Court.  I wanted to

13    talk through with the parties what they've proposed, why

14    they've proposed what they've proposed, and see if we can come

15    up with a schedule and a system that makes the most sense.

16         Let me just identify the agenda that I have for today.

17    First and foremost, I'll mention to the Ashton counsel that we

18    were supposed to have a conference at 2:30 to discuss the issue

19    in the *Lefft* case.  That's spelled L-e-f-f-t.  Having not heard

20    from counsel from that case this morning, we called to see

21    whether that person was going to be appearing, and the person

22    was unaware of the conference.  Hopefully, you got notice as

23    soon as we did.

24         MR. POUNIAN:  We did get notice, your Honor.  Thank

25    you.

N4BDWTCC

1        THE COURT:  Good.  So apologies for you coming in a

2  little bit early.  I will set a schedule to address that issue.

3  I'm very concerned by the issues that were raised in your

4  letter and hope to get to the bottom of it as quickly as

5  possible.

6        All right.  The issues for this afternoon are to

7  discuss the *Daubert* briefing -- I understand that the parties

8  have largely agreed on page limits with respect to that, but I

9  had some open questions about that.  With respect to the

10  motions to dismiss, I think the open issues are page limits,

11  the role of the Ashton complaint --

12        MS. BENNETT:  I'm sorry, your Honor, just briefly, I

13  have heard from people who have tried to listen on the line

14  that they can't hear anything.

15        THE COURT:  We have done our best.  I'll have my

16  deputy see if we can look into it.  Obviously the microphone is

17  working.  We may not have a better solution I'm afraid.

18        MS. BENNETT:  Okay.  I'll let them know.

19        THE COURT:  Thank you for letting me know.

20        I see that my deputy just a hit a button that changed

21  color, so maybe that made a difference.

22        All right.  So with respect to the motions to dismiss,

23  there's open questions about page limits, about the role of the

24  Ashton counsel, whether cross-motions are appropriate, what, if

25  anything, the Court should do about averments of fact and

N4BDWTCC

1    attorney declarations, and the issue of evidentiary objections

2    that may be raised.  I think those are all of the issues for

3    today.

4         I'm going to take the low hanging fruit first and

5    start with *Daubert* motions.  I understand the parties have

6    virtually agreed that there should be for each side's motion a

7    70-page limit on the opening brief, a 70-page limit on the

8    opposition brief, and then a 35-page brief on the reply brief.

9    My question is why there should be parity on the motions.

10        I understand that the Kingdom is filing a motion

11   against -- challenging four experts.  I understand that the

12   plaintiffs are challenging only one expert.  I understand that

13   that expert's report is quite voluminous, but I'm wondering

14   whether or not -- with respect to a brief that is only going to

15   be against one expert as opposed to four, whether or not it

16   makes more sense for that brief to be slightly shorter.

17        I'll just remind the lawyers that this is not my only

18   case, or Judge Daniels' only case, and the shorter the briefs,

19   the more likely it is I can read them multiple times.  But when

20   they go on forever, I get one read through it, so your

21   effective advocacy may be to have a shorter brief than a longer

22   brief.

23        Mr. Haefele.

24        MR. HAEFELE:  Thank you, your Honor.

25        I'll say a word about it, and then I suspect some of

N4BDWTCC

1   my colleagues may have something to chime in as well.

2          Your Honor, maybe we were not as clear on what we

3   proposed, but while we identified Dr. Sageman as the principle

4   person that we would be filing regarding, and he does have a

5   voluminous report of over 700 pages, with a number of issues

6   that would be addressed in that, the anticipation is that,

7   quite frankly, the other two experts that have expert reports

8   by the defendants, we anticipate they would also have issues

9   that would be addressed within that.

10         So, in effect, the issues that the plaintiffs would

11  anticipate addressing are going to focus on all three of their

12  defendants' experts, but we wanted to flag for the Court that

13  given Dr. Sageman's 700-page report and the fact that he is

14  addressing I think it's five of the plaintiffs' experts, he's

15  an opposition defendants' expert, that there's going to be a

16  number of issues; and we think that we need the number of pages

17  to address the number of issues that will be raised regarding

18  Dr. Sageman, as well as Mr. Moss and -- I can't remember the

19  third expert, but it's Mr. Moss and --

20         THE COURT:  You wrote in your March 28 letter that you

21  would also present certain issue-based challenges, which is an

22  expression I was unfamiliar with in the context of a *Daubert*

23  motion.  So I take it what you're saying is you're going to

24  move against all three experts.

25         MR. HAEFELE:  I think that's probably right, that all

N4BDWTCC

1    three experts will be implicated in the motion.

2                THE COURT:  Okay.  Anything that the Kingdom wants to

3    say on this particular topic?

4                MR. RAPAWY:  No, your Honor.  I think --

5                THE COURT:  My understanding, and I'll address this to

6    Mr. Nitz, is that Dallah Avco, to the extent that they're going

7    to be involved in the *Daubert* briefing, is going to join

8    whatever briefing the Kingdom files?  Is that correct?

9                MR. NITZ:  Yes, Judge.

10               THE COURT:  Okay.  So I shouldn't expect any

11   additional pages from you?

12               MR. NITZ:  No, your Honor.

13               THE COURT:  Okay.  That makes you my favorite party.

14               I'm going to take all of this under advisement.  I'm

15   going to not necessarily agree on page limits, but the fact

16   that you all are working cooperatively and agree on this is

17   obviously persuasive to me.  I'm going to hear from you on all

18   these issues, and then go back to chambers and issue an order

19   setting forth what I think makes the most sense.

20               I'll also tell you all, so that you know the division

21   of labor, I will be handling the *Daubert* motions, and I will

22   issue an opinion and order on those motions.  Obviously, the

23   parties can file objections if they wish to, but it will not be

24   a report and recommendation on the *Daubert* motions.  Judge

25   Daniels will be handling the motions to dismiss, so he has

N4BDWTCC

1   asked that I get the motions ready for him, but he is going to

2   be handling them in the first instance, so I just wanted you

3   all to know that with respect to the motions to dismiss, you

4   shouldn't anticipate a report and recommendation coming from me

5   to him.

6           All right.  With respect to the plaintiffs' request

7   for an extension, I'll say that I share the Kingdom's

8   frustration that, A, after this date was set several weeks ago,

9   it is only now being asked for an extension, and, B, the

10  possibility, which is borne out in the history of this case,

11  that extension requests keep coming in, and the case needs to

12  move forward.  That being said, I think 12 days is not so

13  objectionable that I don't want to be an unreasonable person,

14  but in granting that request, which I will grant today, I don't

15  expect to constantly be asked to extend, extend, extend.  This

16  case needs to come to a crescendo at least with respect to the

17  issues that are present before the Court now.

18          So I grant that request to extend the deadline to file

19  to May 12, and we'll move the resulting deadlines as well, but

20  all of the parties should understand that I don't expect to get

21  additional requests for extensions beyond this.

22          All right.  Let's move to the motion to dismiss

23  issues.  Many moons ago, we talked about the idea of the

24  plaintiffs first filing some sort of statement of facts or

25  averment of facts.  We have different language for it.  Later

N4BDWTCC

1   the plaintiffs decided that that was not something they felt

2   was appropriate.  Judge Daniels has now set a schedule with the

3   defendants filing the first motion, and so that will be the

4   schedule.

5        So the Kingdom is going to file its first motion

6   renewing the motion to dismiss for lack of jurisdiction.  The

7   plaintiffs will respond to that.  I understand in so doing,

8   they intend to submit an averment of facts at that time setting

9   forth the evidence that they believe establishes jurisdiction.

10       I guess let me begin by asking counsel for the PECs

11   what you see that looking like as a filing matter.

12       MR. CARTER:  Thank you, your Honor.

13       I think what we envision is something consistent with

14   what the rules generally provide for.  Virtually any motion

15   that seeks dismissal of a claim, whether it's in the context of

16   Rule 12 or in the context of a motion for summary judgment

17   under Rule 56, in either of those settings, there is

18   essentially some sort of pleading or statement of the facts in

19   evidence that comes into play and guides the analysis for the

20   Court.  In the context of Rule 12, it's typically a complaint,

21   which can be amended in response to the motion under Rule 12.

22   In the context of Rule 56, it's a Rule 56 statement, as we've

23   done recently for some of the other jurisdictional testing

24   motions.  It looks a lot like a pleading, but in the Rule 56

25   context, obviously it includes citations to the evidence that

N4BDWTCC

1    sits behind the factual allegations and evidentiary proffer

2    being made in support of jurisdiction.  In the

3    post-jurisdictional context, the cases generally talk about it

4    as an averment.

5         We filed averments in the context of this litigation

6    numerous times.  Those averments have generally been titled

7    averments of fact and evidence and Rule 56 statements, because

8    many of the motions we've been faced with have been styled

9    either motions to dismiss or for summary judgment.  And so this

10   is sort of a traditional approach to filing pleadings that

11   crystalizes the facts in evidence that support the plaintiffs'

12   in this case jurisdictional proffer.  Normally it's a claim, if

13   it's a substantive motion.  Outline the evidence sitting behind

14   it for the Court, and then allow the Court to see very clearly

15   which facts are actually in dispute for purposes of the motion

16   and may require resolution at a hearing or through some other

17   mechanism.  But it's a styling of a pleading that the Court's

18   very familiar with, and that is traditional and customary under

19   the Federal Rules and in federal practice, your Honor.

20        THE COURT:  So I can anticipate something like

21   paragraph one, a statement, and then a citation to a document?

22        MR. CARTER:  Correct, your Honor.

23        THE COURT:  Thank you.

24        MR. CARTER:  You're welcome.

25        THE COURT:  Let me ask a question now to the Kingdom.

N4BDWTCC

```
 1              So when we were discussing this a while ago, my
 2   understanding of the Kingdom's position was they were put in a
 3   slightly difficult position to move if they don't know the
 4   averments that the plaintiffs are going to rely on to support
 5   jurisdiction.  So one thing that occurred to me is that rather
 6   than a traditional briefing schedule where your motion papers,
 7   the first opening brief, is, to use a technical term, the big
 8   one, and the reply brief smaller, that it might make sense to
 9   do it in the inverse and have a shorter opening brief, where
10   you make whatever arguments you're going to make.  The
11   plaintiffs, in opposing that motion, would then file their
12   averment of facts, and your reply brief would be your
13   opportunity to more fully address and challenge the facts as
14   you see appropriate.
15              Does that make sense to you, and, if so, or, if not,
16   what are your feelings about it?
17              MR. RAPAWY:  Thank you, your Honor.
18              So that would alleviate -- so we have two concerns
19   with the procedure that the plaintiffs have proposed.  One of
20   them, and I had -- as your Honor mentioned in our original
21   proposal, had been their jurisdictional statement goes first.
22   Then we move against that, and that would give us something to
23   shoot at if you like.  But the schedule that Judge Daniels sent
24   is not consistent with that, so I understand that to be off the
25   table.
```

N4BDWTCC

1          Our concern with the current situation is that we have

2     enough time and enough pages to respond to whatever they put

3     in.  And, you know, I think your Honor is suggesting more pages

4     on the back end, which would address half of that.

5          I do want very much to adhere to the schedule.  I

6     think we're bound to adhere to the schedule that Judge Daniels

7     has set.  And I do have a slight concern about them putting in

8     an averment of unlimited length, even if we have more pages to

9     respond to it, if we then get the 30 days, rather than the 60,

10    because we just -- I don't know how long it's going to be.  I

11    do know in the past they had put in 80 pages for their brief,

12    and then an additional 160 pages for their averment, and that's

13    actually quite long to respond to, even if I have a relatively

14    long reply.

15         So that's my concern, that we just have enough space

16    and enough time with respect to that.

17         THE COURT:  So it sounds like -- it may be that the

18    Court sort of gives you a page limit you can use for both

19    briefs, one page limit, and you can decide how to divvy it up

20    yourself is what makes most sense.  But in my thinking it

21    through, because of this slightly complicated procedural

22    posture, it seemed like it might make more sense for your reply

23    brief to be larger and for the Court to grant you permission to

24    respond to things, you know, even if they were not raised in

25    your opening brief, because there may be issues that are raised

N4BDWTCC

1   in the opposition that require your response.

2            MR. RAPAWY:  I think that would certainly go some

3   distance toward alleviating our concerns, your Honor.

4            THE COURT:  Let me then ask you a questions, which

5   I'll ask to the PECs, which is, I, too, share the concern about

6   having an unweldy set of materials for the Court to review.  I

7   know that there's been some letter writing about whether there

8   should be any limit to the number of averments or declarations,

9   et cetera.  My thinking right now, my current thinking is to

10  not set any limits on that, but to require that any statement

11  of facts that the parties want the Court to consider has to be

12  cited in the motion papers, meaning the motion is the

13  opportunity -- the brief I should say is the opportunity for

14  the parties to marshal the evidence and make whatever arguments

15  they wish to make and cite to the record.

16            The record can be as long as is appropriate, but the

17  Court is not going to independently review an additional record

18  to get additional narrative and advocacy.  All of the advocacy

19  needs to be in the brief with a citation to the record.  That's

20  my current leaning right now.

21            Do you have a reaction to that?

22            MR. RAPAWY:  So if I say on reply they didn't cite

23  this part of their averment in their opposition and, therefore,

24  those arguments are forfeited, that would be a good -- that

25  would be consistent with the Court's proposal?

N4BDWTCC

1          THE COURT:  I believe so.  I believe so.

2          The idea would be, and many judges in this court have

3     this, actually, as an ordinary rule of practice, where you have

4     to put any factual averments in your brief, so that the lawyer

5     cannot then sort of take advantage of attorney declarations or

6     other submissions to advocate for other positions, and it

7     really requires the parties, I think appropriately, to focus on

8     the best evidence, and to make their arguments in their brief,

9     and marshal the evidence in a way that's the most effective.

10         MR. RAPAWY:  I think our first preference would be for

11    there to be a page limit, your Honor, but if there is no page

12    limit, then I think what your Honor is proposing would be

13    better than a situation in which we had no effective

14    opportunity to respond to a lengthy averment.

15         MR. CARTER:  Your Honor, I think there are a few

16    reactions.  Obviously, if they want to respond to the averment,

17    they can include a counter-statement similar to Rule 56, which

18    would be their response to our statement of facts, and things

19    that they view undercut it or --

20         THE COURT:  But you have to marshal the evidence to

21    convince the Court that your position is correct, and so your

22    job as an advocate is to take those facts and to put them in a

23    brief of -- I think it will be quite a lengthy brief.  To put

24    it in a brief and to say to, in this instance, Judge Daniels,

25    here is the evidence we have that supports jurisdiction in this

N4BDWTCC

1    case.

2            So it seems to me that this allows you to decide what

3    you think is important, put that in the record, but I think it

4    unfairly burdens the Court to additionally have a whole set of

5    additional facts and narratives that you don't think are

6    important enough to put in your brief and expect the Court to

7    read those statements of facts and use them potentially to

8    support the Court's ultimate ruling.

9            MR. CARTER:  Your Honor, I understand the -- I think

10   the concern is, number one, we're having this conversation

11   without any understanding of what the page limit for the brief

12   would be, which is obviously an area of concern.  In terms of

13   the record --

14           THE COURT:  Let's say it was what you wanted.

15           MR. CARTER:  Okay.  Well, in terms of the record that

16   we're dealing with, we had 43,000 pages of evidence between

17   what the Kingdom produced, what the FBI produced pursuant to

18   the protective order, the executive order materials that were

19   released pursuant to President Biden's executive order, and the

20   MFPS materials.  Those are the pages.  There's a vast array of

21   video evidence as well.

22           This does involve a covert conspiracy, and by its very

23   nature is circumstantial and depends on a lot of building

24   blocks to make clear what events happened that people were

25   deliberately trying to conceal.  And I don't think that there's

N4BDWTCC

1    a problem referencing the averment in explaining and

2    characterizing, you know, allegations in an averment that all

3    point to this common design in a way that, you know, couches

4    groups of paragraphs that lead to the same conclusion, and

5    clearly invoke them and make clear that they're part of the

6    showing.

7            The concern I have with what Mr. Rapawy said is that

8    any time a word isn't referenced, they're going to say you

9    forfeited your right to rely upon that, and that's generally

10   not how the rules work.  Rule 56, you know, generally provides

11   a mechanism to put these things in.  We have every intention of

12   providing the Court with the clearest presentation of the

13   factual record possible, and to frame it in a way that makes

14   everything understandable.  The concern is just simply that

15   we're going to get into this territory where we're fighting

16   primarily over whether or not things have been cited adequately

17   in the brief for the Kingdom's acceptance.

18           THE COURT:  Okay.  So I take it from that, then, that

19   if the forfeiture claim or argument that Mr. Rapawy just raised

20   was off the table, that you don't have an objection otherwise

21   to just making sure that any factual averments that you are

22   relying on are in the brief?

23           MR. CARTER:  I think that's correct, your Honor.  We

24   could have some pretty expansive expert testimony here, and the

25   normal way that this would be addressed isn't necessarily

N4BDWTCC

1    through the briefing.  It's through a hearing.  And the Court

2    would hear through the witnesses, and the testimony would come

3    in through that mechanism.

4         So, you know, I think we've made clear our belief that

5    there will need to be a hearing here if the Court's going to

6    resolve any factual matters, and the testimony that our experts

7    are proffering would come in as part of that hearing.

8         THE COURT:  Right.  So whether there's going to be a

9    hearing or not will be an issue that Judge Daniels decides, and

10   I have no idea what he will decide.  What I'll say to you, if

11   you want free legal advice, is I would protect your interests

12   on the off chance that you don't have an evidentiary hearing.

13        MR. CARTER:  Understood, your Honor.

14        Your Honor, I think that's sort of a baseline

15   understanding of all of this, which is part of the reason that

16   we found the Kingdom's proposal somewhat unusual and

17   remarkable, because the Federal Rules do contemplate they will

18   file their motion and we will do what's appropriate under the

19   Rules to respond to it, and that's very much what we intend to

20   do in accordance with our burden based on the cases.

21        THE COURT:  That's a good segue into another question

22   I had, which is you contemplated filing a cross-motion, which I

23   don't quite understand.

24        MR. CARTER:  Right.

25        THE COURT:  It doesn't seem appropriate to me.  Can

N4BDWTCC

1  you explain to me why you should be able to file a cross-motion

2  and what that would look like beyond opposing the Kingdom's

3  motion?

4           MR. CARTER:  Sure, your Honor.  And I think it relates

5  to one of the issues of process that you raised with the

6  Kingdom.  In the context of the FSA, the burdens are very

7  different.  We have a burden of production showing that there

8  is evidence and facts that would support a showing of

9  jurisdiction.  They have the burden of persuasion.  And under

10  the regime your Honor has been discussing this morning, they're

11  primarily going to respond to our burden of production in their

12  reply brief.

13           THE COURT:  Correct.

14           MR. CARTER:  Which is where they will be proffering

15  their evidence in support of their burden of persuasion, their

16  challenges to our evidence.  We need an opportunity to respond

17  to their proffer on their burden of persuasion.  That wouldn't

18  normally be necessary, because the burdens don't work that way

19  in most settings, but in this context, the burdens are just

20  different from what they are to just normal sort of challenges

21  seeking dismissal, because it's the defendant who has the

22  ultimate burden.  And just as the defendant normally gets the

23  final say when the plaintiffs have the burden, we need an

24  opportunity to respond to what they offer in support of their

25  burden.

N4BDWTCC

| | |
|---|---|
| 1 | THE COURT:  Right, although I'm sure they're going to |
| 2 | say, because it is their burden, they want the last word. |
| 3 | MR. CARTER:  But, your Honor, again, that wouldn't |
| 4 | normally be how it works in a traditional motion under Rule 56, |
| 5 | where the plaintiff has the burden, the defendant files the |
| 6 | motion -- or the plaintiff makes their proffer having a burden, |
| 7 | and the defendant gets to respond to it.  We're in a position |
| 8 | here that a defendant would normally be in, in that they're |
| 9 | making their proffer for burden of persuasion in a reply brief |
| 10 | and we need to respond. |
| 11 | THE COURT:  That's only a product of the fact we don't |
| 12 | have your facts, right?  I mean, if we had -- |
| 13 | MR. CARTER:  Yes. |
| 14 | THE COURT:  I'm not going over old ground, but if we |
| 15 | had your averment of facts before, we wouldn't have this more |
| 16 | complicated situation, which is why we have a huge conference |
| 17 | on page limits and scheduling.  So it is a bit of a product of |
| 18 | the circumstances we're in, which I'm not necessarily saying is |
| 19 | problematic.  We just need to deal with -- |
| 20 | MR. CARTER:  Yes. |
| 21 | THE COURT:  -- those facts. |
| 22 | Okay.  So that's helpful to me, though.  Your desire |
| 23 | for a cross-motion is because you want to respond to what I |
| 24 | think will really be the heart of the defendant's response, and |
| 25 | will probably come in their reply brief. |

N4BDWTCC

| | |
|---|---|
| 1 | MR. CARTER:  Correct, your Honor, and the way they |
| 2 | intend to try to convince the Court that they've met their |
| 3 | ultimate burden of persuasion.  And we'll be seeing that for |
| 4 | the first time in many respects in their reply brief. |
| 5 | THE COURT:  Okay.  Mr. Rapawy, anything you want to |
| 6 | add as well? |
| 7 | MR. RAPAWY:  Your Honor, it is not the case that a |
| 8 | party, a movant, in a situation where the movant is seeking |
| 9 | relief on an issue, where the movant may have the ultimate |
| 10 | burden of persuasion, does not get the reply.  I mean, if you |
| 11 | have a standard defense moving for summary judgment on the |
| 12 | issue of statute of limitations, its affirmative defense, the |
| 13 | defendant bears the burden of proof -- the burden of |
| 14 | persuasion.  You get a motion.  You get an opposition.  You get |
| 15 | a reply.  You do not get an automatic sur-reply on the theory |
| 16 | that the plaintiff needs to rebut the defendant's showing, |
| 17 | because the defendant has the ultimate burden. |
| 18 | I just could not disagree more with what Mr. Carter |
| 19 | has said about how things normally work in motion practice. |
| 20 | The movant files the motion.  The opposition is the opposition. |
| 21 | The reply is the reply.  And that's true regardless of who |
| 22 | bears the burden of persuasion on the underlying issue. |
| 23 | THE COURT:  Understood.  This case is unusual, but I |
| 24 | understand your point.  Thank you. |
| 25 | All right. |

N4BDWTCC

1          MR. POUNIAN:  Your Honor, may I raise a different

2     suggestion --

3          THE COURT:  Sure.

4          MR. POUNIAN:  -- on that particular -- I had proposed

5     originally that the parties exchange briefs similar to what

6     we're doing on the *Daubert* brief, where both parties are

7     exchanging briefs, and then opposing, and then replying.  And I

8     had proposed originally to the Court that both parties submit

9     their briefs, Saudi Arabia moves to dismiss, the plaintiffs

10    move for a finding of jurisdiction, which is what our claim is

11    under the rules, and that both parties then oppose those with

12    their opposition, and then reply, which would allow all the

13    parties to have the same number of pages and the same

14    opportunity to answer each other.  And Saudi Arabia would have

15    an opportunity to answer our -- the plaintiffs' averments of

16    fact and vice versa, and that would then streamline the process

17    and, you know, prevent the need for a sur-reply, what Saudi

18    Arabia calls a sur-reply, but what the plaintiffs would call a

19    reply.

20          So that was just a simple, hopefully the Court will

21    think elegant, solution to the issue, but I'm just throwing it

22    out there as a possible compromise suggestion.  I'm not sure

23    whether Judge Daniels already considered that and rejected it

24    in the schedule that he set up for the parties, but I think

25    that that solves all the possible problems in terms of getting

N4BDWTCC

1    the issues resolved.

2              THE COURT:  I'll take that under advisement for sure.

3    You know, my two reactions to that are, one, that means that

4    the Court is reading at least six briefs, if not more, rather

5    than four; and, two, that -- three or four, depending on how

6    this plays out; and, two, I have some concern about the way the

7    record is set up.  If both sides are submitting even the same

8    documents, citing them differently, and then the Court is

9    trying to figure out an enormously voluminous record where the

10    same document is found in two different filings, it just

11    strikes me as being potentially difficult to manage.

12              But I appreciate the elegance of the idea, and so I'll

13    certainly take it under advisement.  But, Mr. Pounian, since

14    you stood up, I'll now turn to your issues here.

15              Let me be as crystal clear as possible, because I will

16    tell you that I am extremely frustrated by the suggestions from

17    all sides, that what is permitted with respect to the Ashton

18    plaintiffs and their complaint has anything to do with the

19    sanctions issue.  We had this issue five years ago, and dealt

20    with it then.  I will deal with it today, but the suggestion

21    from any side that the Court is doing anything in any way to

22    either favor or disfavor any party in light of the sanctions

23    issue I find offensive, and it's -- I want to be very clear on

24    the record that I'm addressing the issue on the merits, as I do

25    every issue here.  What is appropriate with respect to Ashton

N4BDWTCC

1    has nothing to do with counsel's role on the PECs.

2              So I did want to talk to you, though, about what

3    Ashton is seeking.  I have reviewed Judge Daniels' 2018

4    decision, which allowed for jurisdictional discovery.

5    Reviewing that, I've reviewed the consolidated amended

6    complaint and the Ashton complaint, and although they are quite

7    different in certain regards generally speaking, as we focus on

8    the only issues that are at play right now, in light of Judge

9    Daniels' 2018 decision, the Ashton complaint is a lot thinner

10   on those issues.

11             The issues of agency and the like are much more

12   developed in the consolidated amended complaint, and so whereas

13   in 2017, when we were setting briefing schedules, we had two

14   full complaints that were in material regards different, at

15   this point in the process, I'm unaware at all the difference

16   between what Ashton is alleging as compared to the consolidated

17   amended complaint with respect to the issues that are at play

18   right now, and why the Ashton complaint, to the extent it is

19   different, needs to have a full briefing, independent of the

20   Plaintiffs' Executive Committee.  So if you could explain that

21   to me, I'd appreciate it.

22             MR. POUNIAN:  Thank you, your Honor.

23             The differences don't rest in the complaints, your

24   Honor.  Those complaints were drafted and filed six years ago.

25   The differences really go to the role that the Kreindler firm

N4BDWTCC

1    has played in this litigation and the work that we've done over

2    the past six years.  And it's the various different things that

3    we have done, in terms of investigation that we lead, in terms

4    of hiring FBI agents to go out into the field and collect the

5    witnesses, meet the witnesses, collect the proof and --

6          THE COURT:  That was done -- sorry to interrupt you.

7    That was done in your individual law firm capacity or as a

8    member of the Plaintiffs' Executive Committee?

9          MR. POUNIAN:  We did that on your own, your Honor, and

10   we shared the results of that with the PECs.  And that work is

11   still continuing to this day.  We are still -- we are still

12   pursuing that work today, based on the evidence that was just

13   released for the first time last year from the Metropolitan

14   Police in England, and also the executive order production.  We

15   are still pursuing leads that we only learned for the first

16   time last year, and it's a unique situation, because there were

17   many leads that were never followed up by the FBI, or they

18   didn't at least make it public what they had done.  But we're

19   in the role of pursuing really what is a counter-terrorism

20   investigation regarding events 20 years ago in California, and

21   tracking down various witnesses and leads on that issue.

22         THE COURT:  That's different than what the PECs are

23   doing?

24         MR. POUNIAN:  Well, we played a unique role in doing

25   that, as we are the ones who lead that investigation.  I'm not

N4BDWTCC

1   here to speak as to what the other PEC members have done.  I'm

2   discussing our unique role.  And the reason why -- I think

3   Judge Daniels said it in his opinion in January, that we should

4   have the ability to present our expertise regarding the Saudi

5   Arabia issues going forward, that we should be able to have an

6   effective voice on that, because we played a leading role on

7   that issue.

8          In addition to the investigation, your Honor, there

9   are the experts.  We hired six of the seven experts, and have

10  dealt -- have been the ones dealing exclusively with them, and

11  that work is also continuing, not only with regard to the

12  *Daubert* motion, but in terms of our investigation.  And that's

13  been a very detailed, complex work that's -- involves a lot

14  of -- you know, thousands of documents, and reviewing these

15  with the experts, and going through it all.  And we've been

16  doing that essentially on your own.

17         The firm two years ago hired a former prosecutor from

18  Europe, Gavin Simpson, to come over and join the team.  And we

19  have been working non-stop assembling the case together, and

20  assembling it for the Ashton clients, Ashton plaintiffs.  And

21  in that situation, your Honor, I know that the -- this Court

22  previously allowed us 70 pages, and the CAC plaintiffs 80

23  pages, and I think that that's a template that should be

24  followed here, because we need the right to present before the

25  Court and on behalf of our clients, to effectively represent

1    them in this Court.  We need the right to present these facts

2    and this evidence to the Court.

3         Now, I'm not --

4         THE COURT:  Just so I'm clear, sorry to interrupt you,

5    but are you suggesting to me that the evidence and facts that

6    you are going to present to the Court or that you are seeking

7    to present to the Court is different and separate from what the

8    PECs would present on behalf of all of the plaintiffs?

9         MR. POUNIAN:  Your Honor, I don't know, your Honor, as

10   I'm standing here right now to what extent it will be

11   different; but I do know we've done extensive work and

12   investigation on our own, and pursued those lines of

13   investigation on our own.  And we believe that we have evidence

14   that needs to be presented before the Court in this motion.

15        THE COURT:  Why shouldn't that evidence be presented

16   in one brief jointly?

17        MR. POUNIAN:  Well, we will work -- we will work

18   collaboratively with the Plaintiffs' Executive Committee.  We

19   want to work collaboratively with them, but, your Honor, the

20   amount of evidence and the amount of facts that are involved

21   here make it extremely difficult.  It's such a complex case,

22   and so difficult; and we've developed a great amount of

23   expertise from our work on the case.  It's very difficult to

24   simply share it in a situation where you're not sitting at the

25   table as an equal partner in terms of the back and forth, and I

N4BDWTCC

1    just feel that in order to effectively advocate for our client,

2    we need to have the opportunity to stand up like I'm standing

3    up now to present the case that we have put together on behalf

4    of our clients.

5              And it's a -- we're going to do everything we can,

6    your Honor, to avoid duplication.  I agree with what your Honor

7    said before about effective advocacy.  I don't believe it's

8    effective -- you know, the length of the brief should not be

9    what's important.  It's being concise and as short as possible,

10   and we will always effectively try to do that.  But in terms of

11   coming forward and speaking with a voice for our clients and

12   presenting the case in the way that we believe it has to be

13   presented, I think it's essential that the Court grant us that

14   right.

15             And, as I said before, we've already done this before.

16   We've had two briefs on the first motion to dismiss.  There's

17   no reason I don't think to change that template now at this

18   point.  There's no -- the needs of our firm and on behalf of

19   the Ashton clients to set out the case I think are very

20   important, your Honor, and I don't think our right to

21   effectively do that should be compromised.

22             THE COURT:  Thank you.

23             I want to hear from the PECs and from the Kingdom.

24   I'm happy -- it looks like, Mr. Haefele, you're ready.

25             MR. HAEFELE:  Thank you, your Honor.

1          THE COURT:  Just make sure the microphone is close to

2     you so we can hear you clearly.

3          MR. HAEFELE:  Yes.  I have just a few responses to

4     what Mr. Pounian said.  I guess the first thing I would say is

5     that the Ashton clients are represented on the PECs, and, in

6     fact, there's at least two Ashton counsel who are on the PEC,

7     remain on the PEC.  And the contribution of Ashton counsel will

8     be incorporated, whether individually or separately, whether

9     just one or two briefs.  The anticipation is the PECs, as

10    always, intend to cooperate with the plaintiffs' counsel and

11    listen to what the plaintiffs' counsel have to say to

12    incorporate it into whatever response the PECs give on behalf

13    of all the plaintiffs, as it has always strived to do from the

14    beginning of this MDL.

15          The PECs' position has been that it's for the Court to

16    decide whether there's one or two briefs, but that it shouldn't

17    impact -- whether there's one or two briefs shouldn't impact

18    the PECs' number of pages.  We want to make sure we're clear on

19    that.  If the Court decides that there's two briefs, we want to

20    make sure that that doesn't take away from the ability of the

21    PECs to fully brief on behalf of all the plaintiffs; and if

22    there are two briefs, that there needs to be coordination as

23    the CMO 3 requires.

24          The PECs speak on behalf of all the plaintiffs, not

25    just the CAC plaintiffs, not -- the idea is that we're

N4BDWTCC

1    representing all of the plaintiffs in the litigation.  And the

2    notion that Mr. Pounian said there has to be two briefs for the

3    Ashton plaintiffs to be heard belies the notion that they are

4    on the PEC.  Ashton plaintiffs are still represented on the

5    PEC, and their voices are going to be incorporated.

6            One other point I'd really like to make is that this

7    notion that the experts were retained in one case versus

8    another case is not what the PECs did.  When the PECs

9    collectively identified the experts in the case, if you go back

10   and look, your Honor asked the PECs to identify the plaintiffs'

11   experts on behalf -- the PECs' expert on behalf of the

12   plaintiffs.  And when the experts were identified, they were

13   identified on behalf of all of the plaintiffs, all the cases in

14   the litigation, in the same manner that we identified all the

15   plaintiffs' experts when we were doing the charity's deposition

16   or the charity experts, we did the same thing back then.

17           The notion that there is one set of experts for some

18   plaintiffs and not others completely takes away from the CAC

19   plaintiffs, who identify these experts as well.  So what we're

20   looking at for the *Dauberts* and for the motions to dismiss,

21   these are experts who are for the litigants in their entirety,

22   not for one group or another.

23           THE COURT:  Thank you.

24           MR. HAEFELE:  Thank you, your Honor.

25           THE COURT:  Mr. Rapawy.

N4BDWTCC

1          MR. RAPAWY:  Thank you, your Honor.

2          Our preference, as we said in the letter, is one all

3     inclusive brief for each side.  The best manner to get matters

4     queued up for the Court without getting into a situation of

5     whether a particular argument was responded to or not responded

6     to, or is the same in this brief or that brief, or needs to be

7     addressed by us, or, frankly, by the Court -- because one thing

8     which I do have in mind, although it's a long way down the

9     road, at some point we may be looking at an appeal, and I'd

10     like to make sure that the appeal record is as clean as

11     possible as to what arguments were raised and not raised and

12     what arguments were addressed and not addressed.

13          If the Court allows separate filing by Ashton counsel,

14     we do feel strongly that that should count towards plaintiffs'

15     overall page allotment, because to the extent that they are

16     genuinely different arguments being raised, we would need

17     additional space to respond to different arguments and

18     different facts.  And if they are not different arguments and

19     different facts that are being raised, then there's no need for

20     different briefs.

21          So I don't see a world in which it makes sense for

22     them to have two briefs raising different arguments.  And this

23     sort of goes to Mr. Haefele's point.  You know, his argument is

24     that it shouldn't affect the PECs' page limit, but if you're

25     setting Saudi Arabia's page limit as equal to the PECs', then

N4BDWTCC

1   having the Ashton plaintiffs in there, either they count

2   towards the page limit, to plaintiffs' allotment, in which case

3   we get an equal number of pages to respond, or they don't, in

4   which case we have gotten less than equal amount of space to

5   respond, which, for the reasons we've discussed, is a concern

6   in this case for us to begin with.

7           I also want to just briefly address the argument that

8   was also raised in the letter -- the briefing for the 2018

9   motion to dismiss template here.  I think our view is that this

10  can and should be a much more narrow and focused issue.  Based

11  on the specific allegations that Judge Daniels found, were --

12  pleading a prima facie case that triggered discovery, and

13  narrowing to those facts that he found, if proven true, would

14  be a basis for jurisdiction.  There were far more theories and

15  far more -- if not facts, far more allegations at issue in

16  2017.

17          And as your Honor pointed out, there were also more

18  material differences between the complaints.  So I would just

19  urge the Court not to treat 2017 as sort of a presumptive

20  template going ahead, because I think it's a very different

21  situation.

22          THE COURT:  Thank you.

23          MR. POUNIAN:  Your Honor, may I be heard?

24          THE COURT:  Sure.

25          MR. POUNIAN:  There are thousands of plaintiffs in

N4BDWTCC

1   these suits, your Honor.  It is a very unique situation.  It's

2   an extraordinary situation before the Court where, you know, we

3   served for six years during the course of this litigation

4   against Saudi Arabia on the PECs, and then were removed.  And

5   we essentially lead the effort.  We were involved in taking the

6   lead on all of the depositions in the case.

7        We have developed the case through investigation and

8   with the experts, and we are at a stage now where we need to

9   take the fruits of all of the work that we have done on behalf

10  of our clients and present it to the Court.  And it's a very

11  difficult process to do that when we don't have a seat at the

12  table effectively to make our voice heard inside the committee,

13  and then have to try to discuss a complex set of facts and take

14  those facts and put it through a committee process to try to

15  express our views that are very clear about what the facts will

16  show here.

17        THE COURT:  Right, but this is why I really think that

18  issue is not relevant.  You were on the committee in 2017, in

19  2016 and '17 when the briefs were filed, and you insisted then

20  on having your complaint go forward.  So we did have the model

21  where the Kingdom moved against both committees.  So it can't

22  be that if you were still in the committee, that you wouldn't

23  need this, because you needed it back in 2017.

24        So, in my opinion, the committee representation is

25  sort of neither here nor there given that, you know, in 2017,

N4BDWTCC

1    your colleague stood here and said that he needed to advocate

2    for his clients.  Mr. Kreindler represented that it was

3    important, and when I challenged this idea of having two

4    different complaints moved against, and of course allowing it

5    -- and at that time you were on the committee, so it has

6    nothing to do with committee representation as I understand it.

7    My question is, given the narrow scope of the issues at this

8    point, why is the Ashton complaint so unique that it merits

9    having twice as many pages of briefing filed before the Court.

10   That's the question I'm trying to get answered.

11           MR. POUNIAN:  Well, I think your Honor is correct

12   about the committee not being the factor here, and I view the

13   factor being one group of CAC plaintiffs that include the

14   commercial plaintiffs, and there's the Ashton plaintiffs that

15   include the 9/11 families.  The CAC also includes a large group

16   of 9/11 families, but there's thousands of people trying to get

17   their voices heard here, your Honor.  And I think that it would

18   make the most sense for your Honor to allow both groups, their

19   voice, to present their arguments before the Court, rather than

20   shutting off our voice to be heard effectively on this motion.

21           Mr. Haefele said that we have two counsel, co-counsel

22   on the Ashton -- from the Ashton case that are on the

23   committee.  That's correct, your Honor, but they're not lead

24   counsel on the PEC.  They're not involved in the same way as

25   Mr. Haefele and Mr. Carter are in their respective PECs.

1           And it was the Kreindler firm that was taking the lead

2    on the case against Saudi Arabia and putting the case together

3    and putting all the pieces together.  And it's a very complex,

4    fact intensive case that we've put together, and it's -- it's

5    something that we want to be able to present effectively to the

6    Court.  And we feel that we are the most effective

7    representatives to do that on behalf of the 9/11 families.

8           And I think in that circumstance, and it's an

9    extraordinary circumstance here, it's not a typical, usual, run

10   of the mill situation, but it's an extraordinary one where I

11   think your Honor should exercise your discretion to -- I don't

12   even think it's discretionary, your Honor, because I think we

13   have to have our voice to be heard.  And I say that with

14   respect.  It's essential that we be allowed to stand and argue

15   our case on behalf of our thousands of clients, as it is

16   essential for the CAC plaintiffs to do the same.

17          I'm not trying to shut down anyone's right to talk,

18   but it seems that others are trying to shut down our right to

19   talk.  And that's -- I think there's a problem with that, your

20   Honor, and we object to that.  And I think we should be allowed

21   an opportunity, a voice to be heard on this motion, because the

22   work we've done over the past six years in assembling it and

23   the work we're doing right now still, the continuing

24   investigation that we're conducting is something I think that's

25   essential to properly and effectively represent the 9/11

N4BDWTCC

1   families before this Court.

2            THE COURT:  Thank you.

3            MR. CARTER:  And, your Honor, may I just address a few

4   things quickly?  I understand we've been here for a minute.

5            I'm not here to take a position of whether or not the

6   Ashton plaintiffs should be entitled to file a separate brief,

7   but with regard to a few things that were said, there has been

8   a relatively massive scope of work required on behalf of the

9   PECs during the course of this litigation, and there's been

10  allocation of that work among different members of the PECs

11  over time.

12           I don't think this is particularly the best forum for

13  having a conversation about how workload has been allocated

14  going all the way back to 2003.  I will just say that the folks

15  sitting at the table have contributed massively, and are wholly

16  invested in the process, and have shouldered incredible burdens

17  over the course of this to move the litigation forward on

18  behalf of all of the plaintiffs.  And we share a common purpose

19  and design to win.  That's unmistakable from the work that

20  we've put in under the course of many years.

21           And I think we also understand, appreciate, and honor

22  the obligations of the PECs to solicit and incorporate input

23  from other counsel.  We've made clear in filings with the Court

24  that we intend to do that.  That's absolutely the case.

25           Now, I don't know that we will always end up agreeing

N4BDWTCC

1   specifically about how to present every word and argument to

2   the Court, but our goal is clearly to cooperate with everyone

3   who can contribute value to the endeavor in order to present

4   the best, clearest presentation of issues to the Court.  That's

5   just a commitment I thought necessary to share.

6           Thank you, your Honor.

7           THE COURT:  Thank you.

8           Mr. Carter, I'll stick with you for a moment on a

9   different subject, though.

10          MR. CARTER:  Okay.

11          MR. NITZ:  Excuse me, your Honor.  I apologize.  If we

12  could have one minute on the topic of the role of the Ashton

13  plaintiffs with respect to Dallah Avco's briefing?

14          THE COURT:  I was going to do Dallah Avco later on.

15          MR. NITZ:  That's perfectly all right.

16          THE COURT:  You will get your time, though.  Don't

17  worry.

18          MR. NITZ:  Thank you.

19          THE COURT:  All right.  I wanted to turn to

20  evidentiary issues.

21          MR. CARTER:  Sure, your Honor.

22          THE COURT:  So the proposal, as I understand it, from

23  the Kingdom, and if your colleague is the correct person to

24  respond, I don't mean to put you on the spot, my understanding

25  from the Kingdom is that they propose what I hope would be some

1    sort of simple chart which, in my mind, would be the equivalent

2    of a lawyer standing up and saying, objection, hearsay, some

3    sort of simple chart raising evidentiary challenges to the

4    evidence that the PECs or Ashton are going to put forward in

5    the case.

6          You know, in reviewing the case law about the next

7    step of this case, it's clear that the evidence needs to be

8    admissible, and so there are, I think appropriately -- there is

9    appropriately a need for evidentiary considerations.  Here's

10   the case I was looking for.  In your opposition to that, you

11   say -- I interpret what you say to be, yes, I agree that

12   evidentiary issues are relevant, but we don't think this is the

13   right time or place.  I'm curious as to what you think might be

14   the right time or place.

15         MR. CARTER:  Well, your Honor, I think there are two

16   things.  I think there are certainly issues within the Court's

17   grant of discovery where there are evidentiary issues that come

18   into play.  There are probably some contextual facts that

19   weren't in dispute that were accepted by Judge Daniels in the

20   2018 decision, in which discovery wasn't authorized, where

21   those facts wouldn't come in, because there hasn't been an

22   opportunity to conduct discovery.  But as to the matters where

23   there has been discovery and the evidentiary issues, I think

24   there are two issues.  One, even in the context of Rule 56,

25   it's sort of admissible evidence.  Obviously there are things

N4BDWTCC

 1  like declarations that are hearsay that come in in the context

 2  of Rule 56, because there's an anticipation that at a hearing

 3  or trial they would be reduced to a form of admissible

 4  evidence, so there's that small glitch that's common to any

 5  sort of post-discovery motion practice.

 6       I think the other issue is two-fold.  One, some of the

 7  evidentiary issues may be of a sufficient complexity that they

 8  require some legal briefing.  I'm not talking about massive,

 9  expansive legal briefing, but some comment with regard to the

10  arguments that are being made by the Kingdom to exclude

11  evidence.

12       And going back to the conversation we had earlier,

13  they're going to be making their evidentiary challenges for the

14  first time in their reply.  And consistent with what your Honor

15  said earlier, they're going to be given leeway in their reply

16  to maybe go beyond the types of arguments that are normally

17  permissible in a reply to address things addressed in our

18  opposition.

19       So I think there has to be some mechanism for us to

20  have some kind of word about more complicated evidentiary

21  issues that may not be easily apparent from a simple chart.

22  And obviously, in the context of a trial where there are

23  objections, there's also the broader context of a trial, which

24  can impact the evidentiary rulings itself, based on what

25  witnesses have said on the stand and other matters.  So in

1    certain cases we do think that evidentiary challenges may be

2    best deferred for a hearing.

3             Now, we understand, again, your Honor, whether or not

4    there's going to be a hearing is going to be up to Judge

5    Daniels.  We're certainly going to present our case in a way

6    that meets our burden while advocating for a hearing, but we do

7    think there may be certain evidentiary issues that are best

8    addressed in the context of a hearing, and, at a minimum, with

9    some briefing, so the Kingdom is not saying hearsay to

10   everything without us having an opportunity to explain why

11   things aren't hearsay, fit an exception to hearsay, or why

12   there's a broader legal context that explains why they should

13   come in.

14            THE COURT:  Okay.  That's helpful.  Thank you.

15            Mr. Rapawy, anything you want to say on that point?

16            MR. RAPAWY:  Yes, your Honor, very briefly.

17            First, this concept that there are going to be

18   contextual facts that come in that they don't have to be -- you

19   know, that they don't have to present evidence for, I mean, I

20   just want to make very clear our position, so that there's no

21   claim for unfair surprise later on.  And the belief --

22            THE COURT:  Speak more slowly.

23            MR. RAPAWY:  My apologies, your Honor.

24            I would like to make very clear our position, so there

25   is no later claim of unfair surprise in any respect.  And I

N4BDWTCC

1    believe the case law will support us in this, that they have

2    the burden to come forward with evidence supporting

3    jurisdiction under this statute.  And if they are under the

4    misimpression or make an assumption that we are not challenging

5    facts, or that those facts are uncontested, or if they take the

6    position that discovery has been adequate as to those facts,

7    you know, I don't actually think that that is necessary -- that

8    that is -- I don't think we would necessarily agree with that.

9    So I want to make it clear that, you know, we are going to be

10   challenging their evidence as to the factual predicate for

11   jurisdiction full stop.

12           On the question of the evidentiary rulings, I mean, I

13   don't -- I'm resist -- I'm failing to resist the temptation to

14   say again we did suggest they put their evidence in first,

15   which would have solved this problem.  But leaving that aside,

16   you know, I think we will put in sufficient legal argument in

17   our motion papers as soon as we are aware of which documents

18   they're relying on, and I think to the extent that they believe

19   the documents they are relying on that are clearly hearsay,

20   which many of the 43,000 documents earlier mentioned are

21   clearly hearsay, to the extent they want to make an argument

22   that's there's a foundation to admit that hearsay or exception

23   to hearsay, that's fine.  They should do that in their

24   opposition, when they put their evidence in, using part of the

25   apparently generous page count that they're going to get.

1          I don't think that is unreasonable to do that.  I

2     think usually the proponent of evidence has to explain why it's

3     admissible.  In some cases, it may be obvious.  Nobody's going

4     to challenge the depositions, although obviously there could be

5     hearsay in the depositions.  But notice --

6          THE COURT:  You have to speak more slowly if you want

7     the court reporter to take the words down.

8          MR. RAPAWY:  I do apologize, your Honor.

9          In any event, I think the briefing on the evidentiary

10    standards should be done in motion papers, and I think that to

11    the extent that they have argument they want to make on that,

12    they should make it when they put the documents in.

13         THE COURT:  Understood.  Thank you.

14         All right.  Give me one minute.

15         Mr. Nitz, it's your time.  I understand that with

16    respect to the Dallah Avco brief, that the parties -- thank

17    you -- that the parties, and by that I mean Dallah Avco and the

18    PECs, have agreed to a 40/40/20 page limit.  I heard you

19    wanting to speak about Ashton.  There's been nothing that I

20    have received about Ashton's role with respect to Dallah Avco,

21    and I know in your letter you said that Dallah Avco I think

22    only comes up in three paragraphs of the Ashton complaint.

23         So let me hear what you have to say, and then I'll

24    turn to Mr. Pounian and see whether or not they anticipate

25    wanting to participate separately in this motion as well.

N4BDWTCC

1          MR. NITZ:  Thank you, Judge.

2          As an initial matter, it's not entirely clear from the

3   Ashton plaintiffs' letter and Mr. Pounian's presentation here

4   today whether they are, in fact, going to submit or are asking

5   the Court to authorize a separate brief with respect to Dallah

6   Avco.  That was a position they had taken in communications

7   before the filing of the letters.

8          THE COURT:  Let me stop you, then.

9          Mr. Pounian, are you going to argue you should get an

10  opportunity to brief Dallah Avco separately?

11         MR. POUNIAN:  No, your Honor.

12         MR. NITZ:  It's an easy one then.

13         THE COURT:  An easy one, exactly.

14         Anything further you'd like to add with respect to

15  your client's briefs or any of the page limits or anything like

16  that?

17         MR. NITZ:  A few points.  With respect to the

18  cross-motions, again, I don't understand any of the plaintiffs'

19  briefs groups to be asking for a cross-motion with respect to

20  Dallah Avco.  I would just note that the burden shifting

21  argument with respect to the FSIA that's been discussed in the

22  context of the cross-motions doesn't apply to Dallah Avco.

23  This is more of a normal party to the case to the extent that

24  there is anything normal about this case.

25         THE COURT:  Thank you.

1          Anything you want to say with respect to that?

2          MR. CARTER:  Your Honor, nothing with regard to that.

3          There was a proposal in Dallah Avco's letter to limit

4     Rule 56 statements to a certain number of pages.  You know, our

5     view looking at the case law is that the appropriate length of

6     a Rule 56 statement depends on the complexity of the case.

7     This is a relatively complex case.  I think the Court would

8     agree.  We have every intention of adhering to the rule that

9     plaintiffs provide a concise statement of facts, but we don't

10    think setting an arbitrary page limit makes much sense.  It's

11    not generally consistent with how our practice works, and we

12    don't see it as necessary.

13          THE COURT:  Understood.  Thank you.

14          All right.  This has been enormously helpful for me,

15    so I appreciate having everybody come in, and I am grateful

16    that the parties were able to reach a compromise on certain

17    issues, so thank you for that.

18          As I indicated, I am granting the plaintiffs until --

19    well, I guess we're moving the *Daubert* motions for both sides

20    to May 12th, and we'll issue an order.  If it doesn't go out

21    today, given the hour, it will go out tomorrow, but the parties

22    can sleep well knowing their briefs are due May 12, not

23    May 1st.  We'll just move those deadlines as appropriate.

24    Again, I hope that this is the last request for an extension

25    with respect to these two groups of motions.

N4BDWTCC

```
1        With respect to the rest, I'm going to take it all

2  under advisement and issue a ruling, so that the parties have

3  clarity on how we're going to proceed.  I think that then does

4  it for everything.

5        I know Ms. Bennett had an administrative question,

6  which I'm happy to address here on the record or, if you'd

7  prefer to address it off the record, we can do that as well.

8        MS. BENNETT:  I think I can spare everybody here

9  dealing with this on the record, and I spoke with Ms. Slusher

10  at the outset.

11        THE COURT:  Sure.

12        MS. BENNETT:  I'm happy to deal with it offline.

13        THE COURT:  Okay.  Perfect.

14        Anything from anyone else?

15        Great.  Well, thank you everybody.  I appreciate you

16  being here, and take care.  Enjoy this spring weather we are

17  having.

18        We are adjourned.

19        (Adjourned)

20

21

22

23

24

25
```