```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

IN RE: TERRORIST ATTACKS ON
SEPTEMBER 11, 2001,
                                        New York, N.Y.

                                        03 MD 1570 (GBD)(SN)


------------------------------x         Teleconference

                                        June 26, 2023
                                        4:00 p.m.

Before:

                HON. SARAH NETBURN,

                                        Magistrate Judge


                     APPEARANCES


COZEN O'CONNOR
     Attorneys for Plaintiffs
BY:  SEAN CARTER
       SCOTT TARBUTTON

KREINDLER & KREINDLER, LLP
     Attorneys for Plaintiffs
BY:  ANDREW MALONEY
       STEVEN POUNIAN


ANDERSON KILL
     Attorneys for Plaintiffs
BY:  JERRY GOLDMAN
       BRUCE STRONG
       ALEXANDER GREENE
```

```
SALERNO & ROTHSTEIN
     Attorneys for Defendant
BY:  PETER SALERNO
     AMY ROTHSTEIN

GOETZ & ECKLAND P.A.
     Attorneys for Defendant
BY:  FREDERICK GOETZ
     OMAR T. MOHAMMEDI

LEWIS BAACH PLLC
     Attorneys for Defendant
BY:  AISHA BEMBRY
     WALEED NASSAR

BERNABEI & KABAT PLLC
     Attorneys for Defendant
BY:  ALAN R. KABAT
```

1           (Court and counsel appearing telephonically)

2           THE COURT:  Good afternoon.  This is In re: Terrorist
3  Attacks of September 11, 2001, 03 MD 1570.

4           Can I ask counsel for the plaintiff executive
5  committee -- hello?  Can I ask counsel for the plaintiffs'
6  committee and the federal insurance plaintiff to state their
7  appearance.

8           MR. CARTER:  Good afternoon, your Honor.  Sean Carter
9  from Cozen O'Connor.

10           MR. TARBUTTON:  Scott Tarbutton, Cozen O'Connor.

11           MR. GOLDMAN:  Jerry Goldman, Anderson Kill.  Also on
12  the phone are my colleagues Bruce Strong and Alexander Greene,
13  and I have some summer associates sitting in a conference room
14  with me.

15           THE COURT:  Do we have Mr. Haefele here on behalf of
16  the Burnett plaintiffs?  Mr. Haefele, are you here?

17           MR. CARTER:  This is Mr. Carter.  Mr. Haefele was
18  uncertain whether he was able to join due to the other brief we
19  have due this afternoon.  So I think we can proceed in his
20  absence.

21           THE COURT:  I believe we have lawyers here on behalf
22  of the Ashton plaintiffs.

23           MR. MALONEY:  Andrew Maloney from Kreindler &
24  Kreindler.

25           MR. POUNIAN:  And Steve Pounian.

1              THE COURT:  Anyone else on behalf of plaintiffs who
2     wants to state their appearance?
3              Moving to the defendants, who do we have on behalf of
4     Yassin Kadi?
5              MR. SALERNO:  Peter Salerno and I'm here with Amy
6     Rothstein.
7              THE COURT:  Thank you.  On behalf of World Assembly of
8     Muslim Youth.
9              MR. MOHAMMEDI:  This is Omar Mohammedi and I have with
10    me Fred Goetz.
11             THE COURT:  On behalf of Muslim World League and IIRO
12    and the other charity defendants.
13             MS. BEMBRY:  This is Aisha Bembry.  In the conference
14    room with me is Waleed Nassar.
15             THE COURT:  Any other counsel on behalf of defendants
16    who wants to state their appearance?
17             MR. KABAT:  This is Alan Kabat also for the charity
18    defendants.
19             THE COURT:  So this call is in connection with the
20    May 31 letter that was filed jointly by the parties, proposing
21    additional Daubert motions be filed starting on July 31 with
22    apparently an extensive page limitation.  The letter doesn't
23    indicate how many experts the parties intended to move against,
24    so one of the purposes of today's call is to get a sense of how
25    many experts we are looking at, and whether or not 170 pages

1   for each motion is really reasonable.

2   　　　　The second question, equally important, is what
3   efforts were made, if any, to comply with the Court's April 27
4   order, which as you all know addressed six experts who were
5   presented by the parties as bellwether issue experts.  The
6   purpose of that bellwether process was for the parties to
7   identify experts who would present as many issues as possible,
8   so that the Court could give some guidance for the balance of
9   the experts, rather than having the Court address every single
10  expert and every single challenge.  And I can certainly say
11  with confidence that the parties raise every possible challenge
12  they could with respect to those six experts.  And the Court
13  issued its opinion and identified some of the general
14  principles that can be taken from that order.

15  　　　　And I'm concerned that that process, which was
16  intended to guide the future, has not been taken full advantage
17  of, and that the parties are looking now just to do another
18  round of briefing, which I'm not sure is really the best use of
19  anybody's time.

20  　　　　So, maybe Mr. Carter, I'll just start with you.  And
21  maybe you can answer my second question first, which is what
22  have you done to comply with the Court's first bellwether
23  opinion in order to narrow and limit the issues for resolution
24  now?

25  　　　　MR. CARTER:  Sure, your Honor.  And thank you very

much for the opportunity to address the Court on these issues.

I think from our perspective, we've taken very much to heart your Honor's order, and our view is that there are limited challenges with respect to all six of the defendants' remaining experts that flowed from your Honor's order and that are consistent with the parameters your Honor has established for expert testimony.

Our assessment is that we could probably address most of those issues in due course at a later stage of the proceedings in advance of trial as part of pretrial proceedings, so long as we would not be waiving our right to advance Daubert or other challenges to the experts' testimony by deferring it to that point in time.

I gather that we are differently situated from the defendants, who likely view their challenges to some of plaintiffs' remaining experts as being essential to the arguments they want to make in support of their motions for summary judgment.  We are happy to go through that process, because we believe it will verify that there is no merit to the exclusion of plaintiffs' remaining experts, and it will in fact streamline summary judgment and make all the more clear that summary judgment is not necessary.

But we do understand that the defendants want to go through that process, and since they view that as essential to their approach to summary judgment, we wanted to avoid a

situation in which we were seen as waiving any further challenges, based on the Court's bellwether order, and to ensure that we proceeded as the Court would prefer.

If the preference would be to do them now, we would be dealing with limited challenges with respect to six remaining defendants' experts in many cases because we believe they've crossed lines that your Honor has already set.

THE COURT: Great. That's helpful. I think at the outset I'll just say that I don't think there would be any waiver. I'm happy to put that in an order. As I know you know, it's not essential to file a challenge before summary judgment or even with summary judgment, and often times the issues that are presented in a summary judgment motion don't lend themselves to a need to address the expert discovery.

So I'm 100 percent of the view that only the challenges that are critical to any summary judgment motion should be addressed, either in advance of summary judgment, or with the summary judgment. But to the extent it's the view of the plaintiff that those challenges can await a trial, that's fine on my end. So I have no objections to that.

Let me ask you, another question, Mr. Carter, which hopefully is academic because hopefully we'll end this conference with the plaintiffs deciding they don't need to file motions at this stage. But, if we're filing limited challenges to six remaining defendants, why do we need 70 pages for those

challenges?

MR. CARTER:  Well, your Honor, first, I think our view is there should be parity as between the number of pages afforded to plaintiffs and the number of pages afforded to defendants.  And we indicated in the letter that we took no view as to whether or not 70 pages was warranted or appropriate, given the bellwether rulings.  But we did see it as part of a good-faith compromise in negotiations with defendants to that proposal.  If we were proceeding with motions now, it would perhaps be feasible to do it with fewer pages, although it's roughly 10 pages for each expert, which is not all that expansive.  And there are a handful of issues with regard to each.  But, again, the page limits flowed primarily from compromise discussions.

THE COURT:  Understood. Well, I certainly want to reward compromise, so I appreciate that.  And I agree that there should be sort of fairness here.  As I sometimes say to my children, being fair does not necessarily mean being equal.  So, I think what matters most is that a motion and its opposition are equal.  But if you're moving on a limited number of issues and they are moving on many more, I don't know that the two opening briefs need to be the same.  But I understand your point.  I appreciate it.  So thank you.

Who will be speaking on behalf of the defendants?  Is it Aisha Bembry?

1          MS. BEMBRY: Yes. Good afternoon, your Honor. Yes, I
2  will be speaking for our clients. And I think other counsel
3  also want to also share their views, but I will begin, your
4  Honor.
5          As to your second question, I'll start with that first
6  and thank you for the opportunity for us to have this call and
7  talk about these issues.
8          Certainly from our perspective, and I understand from
9  the other defendants as well, we have taken to heart your
10 Honor's order, and we understand that the principles you've
11 laid out, and there are certain areas, even within the kind of
12 wide latitude that's given to experts, there are areas that are
13 definitely out of bounds. And we intend to focus on those
14 areas, your Honor, and it will be limited challenges in regards
15 to the number of experts. It would be a consolidated motion
16 challenging two of the remaining four experts, and Yassin Kadi
17 and Peter Salerno will be talking about that. There is one
18 expert that is addressing only Mr. Kadi. And counsel for Kadi
19 would like to do a separate motion. They will speak to that
20 specifically.
21         But as to the issues that the other defendants, the
22 collective defendants, will do a consolidated motion against
23 two of the experts, and we think it's important, your Honor,
24 and critical to the case that plaintiffs rely heavily on
25 experts, and in order for us to have an adequate opportunity to

address those issues on a dispositive motion, we need to be able to resolve the issues that they have raised, and in our view, have used experts in ways that your Honor has decided is out of bounds.  And so it's for that reason we think it is important to get those issues resolved in advance of filing the dispositive motions, so it's most efficient in the way we present it, otherwise we would be presenting in an alternate fashion.  If this, then this.  So we think it's most efficient that we address the issues in a limited fashion first, and then move to dispositive motions.

     THE COURT:  And what is limited?  As Mr. Carter was just saying, he was agreeing as a gesture of good faith to the page limits.  How is 70 pages a limited challenge?

     MS. BEMBRY:  So, it is a function, your Honor, of the fact that there will be two separate motions.  And I'll let counsel for Kadi speak to their submission, but for the other two experts and the consolidated motion, we would be addressing that in approximately 45 pages, your Honor.  And the reports that we are addressing are voluminous and fact intensive, and there are many instances where these experts, in our view, in the defendants' view, go out of bounds in what they say.  It is not just weaknesses and issues to be addressed in cross-examination, but issues that need to be addressed now because they are -- it's testimony that your Honor, based on your bellwether ruling, has ruled is out of bounds and we want

1    to be able to address that.  The reports are voluminous, and it

2    is a fact intensive case, and there are a number of.

3             Issues so that's why we're requesting from this

4    perspective of the two experts that will be consolidated

5    amongst the defendants, 45 pages.

6             THE COURT:  And the idea being that the Kadi expert

7    would then be the remaining 25?

8             MS. BEMBRY:  Yes, your Honor.

9             THE COURT:  Is this going to be filed as one motion?

10            MS. BEMBRY:  No.  So there would be one consolidated

11   motion addressing two of the plaintiffs' remaining four

12   experts.  All defendants remaining in the case would join in

13   that motion.  And then Mr. Salerno can speak to the issue of

14   the challenge to the Comras report.

15            THE COURT:  Can you speak, Ms. Bembry, with a little

16   more specificity of what the nature of the challenges to these

17   two experts would be?  You said they're way out of bounds, but

18   what specifically are you referring to?

19            MS. BEMBRY:  So, your Honor in your bellwether ruling

20   has addressed the fact that, as it relates to legal

21   conclusions, speculative --

22            THE COURT:  Sorry, Ms. Bembry.  One second.  I'm sure

23   the court reporter is having the same problem I'm having.  If

24   you are not speaking, can you mute your phones so we can avoid

25   any feedback.

1          Can you begin again.

2          MS. BEMBRY: Yes. Thank you, your Honor.

3          So, we would be addressing issues certainly as to the
4 qualification of the experts, qualifications of the experts,
5 your Honor, but as to the issues that I alluded to as being out
6 of bounds, focusing on improper legal conclusions, opinions
7 that are speculative and conclusory, and opinions that relate
8 to motivations, intentions of the officials and the charities
9 themselves, and then hearsay, your Honor. There is a
10 significant amount of hearsay, improper hearsay, that are
11 contained within these expert reports. And it's those issues
12 primarily, your Honor, that we would be addressing.

13          THE COURT: Have you raised those issues in meet and
14 confers with plaintiffs' counsel?

15          MS. BEMBRY: We have not on an expert-by-expert basis,
16 your Honor, identified areas that we believe to be out of
17 bounds, if that's what you are asking. No, we have not had
18 that type of dialogue with plaintiffs' counsel.

19          THE COURT: It seems to me, again, the whole point of
20 the bellwether process was to give the parties some guidance,
21 and what I had hoped was that, armed with my first opinion,
22 that the parties could then have a back and forth process and
23 potentially reach agreements that the expert would not testify
24 as to X, Y, and Z, because it appeared to violate the
25 parameters that were identified in the bellwether opinion.

1    MS. BEMBRY: Your Honor, if that's something you would
2  like us to take on, we are happy to be involved in a process of
3  that nature, your Honor. That was not something we had
4  approached the plaintiffs, and they had not approached us in
5  that regard. But if that's something you would like us to try
6  to accomplish, we can. You know, I wonder whether there would
7  be success in finding common ground on that. But we are
8  certainly happy to make those efforts, your Honor.
9    THE COURT: That was certainly the purpose of the
10  process. The purpose wasn't to just have a motion filed, get a
11  decision, and then have a second motion filed. The purpose was
12  to educate the parties about how the Court was going to draw
13  the line so that it could inform decisions going forward. So
14  it wasn't intended to just be specific to the one issue that
15  was listed, which is why we left as the conclusion to the
16  opinion itself some principles that the parties can take away
17  from the decision, which are found in the last few pages, pages
18  40 and 41 of the opinion. That's what I'm hoping would have
19  happened. It sounds like it didn't.
20    MS. BEMBRY: Your Honor, we had understood from our
21  hearing back in September of I think it was 2021 that we would
22  have the opportunity to address issues with other experts, but
23  that we would do so and guided by the Court's principles. And
24  as I said, we very much intend to do that. It was not
25  certainly my understanding that what was being asked of us was

to meet and confer on those issues.  But again, if we misunderstood, we are happy to endeavor to try to come to some common ground and then move from there, your Honor.  We are open to taking your Honor's instructions on how we proceed forward.  But, it was our understanding from that hearing that we would have an opportunity to address other experts, after having your bellwether ruling.

THE COURT:  All right.  Let me first turn to Mr. Salerno, then I am going to come back to Mr. Carter to get your view on whether or not a meet and confer would be productive.

So Mr. Salerno, are you going to be speaking with respect to the Kadi motion?

MR. SALERNO:  Yes, your Honor.  Does your Honor have a specific question or I have a few things to say about it, which may address things you've raised in the last few minutes.

THE COURT:  Why don't you begin.

MR. SALERNO:  Okay.  Just to be clear, we think a separate motion on behalf of Mr. Kadi against Victor Comras is appropriate simply because Mr. Comras is the sole expert directed explicitly against Mr. Kadi.  Although they have identified portions of other experts separately that are directed against him.  But he is explicitly against Mr. Kadi, and solely against Mr. Kadi, and Wa'el Julaiden, who has defaulted, but Mr. Julaiden's relationship with Mr. Kadi and

1  vice versa loom rather large we think in plaintiffs' case
2  against Mr. Kadi.
3           And as Ms. Bembry said, and we agree with everything
4  she said, we expect the bellwether decision to be our roadmap,
5  but I'll be explicit in that we need the 25 pages that
6  Ms. Bembry referred to for our motion simply because, A,
7  Mr. Comras' report looms extremely large and it is absolutely
8  essential in plaintiffs' case against Mr. Kadi.  We think he's
9  adduced nothing that would satisfy plaintiffs' obligations
10 pursuant to the Second Circuit's remand in this case.  But, and
11 with all respect to them, we don't expect them to agree with
12 that.  So we would despair of reaching any common ground
13 whereby Mr. Comras is simply dropped as an expert.  He should
14 be in our view, based upon the principles your Honor
15 articulated in the bellwether decision, and that will be what
16 our motion will say.  In order to do that, as Ms. Bembry said
17 about the other experts, Mr. Comras too is particularly, we
18 think, fact intensive.  And ideally we would get an opportunity
19 to oppose every fact the plaintiffs would want to put into
20 evidence, which is presumably everything in his report.
21 Obviously we can't do that in any reasonable page limit, but we
22 think 25 pages is the minimum.  And that is, of course, as I
23 don't have to tell your Honor, the normal amount for a normal
24 motion in a case pursuant to your Honor's rules.
25           THE COURT:  Mr. Salerno, can I ask you a question.

1           MR. SALERNO:  Sure.

2           THE COURT:  So far everything you said sounds like a
3    motion for summary judgment.

4           MR. SALERNO:  Well, except the motion for summary
5    judgment, Ms. Bembry said will look a lot different if
6    Mr. Comras' report is excluded versus if it is included.  If it
7    is excluded, obviously, plaintiffs will have an entirely
8    different response to our motion than if it is included.

9           THE COURT:  I understand that.  I understand how that
10   works.  My point is, you said they haven't adduced any
11   evidence.  That seems like a summary judgment standard.  What
12   are the legal grounds on which you are challenging the expert?

13          MR. SALERNO:  We're challenging the expert on pretty
14   much everything that Ms. Bembry referred to with respect to the
15   other experts that will be the subject of the joint motion.
16   Mr. Comras' testimony and reports are speculative, they opine
17   on our client's intent and state of mind in conducting various
18   transactions.  He attributes motives to transactions and
19   attributes almost fact transactions and ignores alternative
20   possible explanations.  He has legal conclusions, he is
21   parroting hearsay.  He is not applying expertise to his
22   parroting of the hearsay.

23          That's sort of the nub of it, your Honor.  And
24   relevance, of course, is also related to all of that.  And
25   relevance is where the fact that he, we say, adduces nothing

1  that meets plaintiffs' burden, comes into play.  And he fails
2  to follow his own so-called methodology.  It's not much of a
3  methodology, but I don't think your Honor wants me to get too
4  much into the weeds about what either a summary judgment or a
5  Daubert motion would look like.  But that's the nub of it.
6             THE COURT:  Mr. Carter, can I turn to you.
7             MR. CARTER:  Yes, your Honor.
8             THE COURT:  My first question to you is do you think a
9  meet and confer could be productive and could it result in
10 compromise positions where the parties look at the bellwether
11 opinion and agree to exclude certain testimony that's already
12 set forth in the expert opinions?
13            MR. CARTER:  Well, your Honor, first, we obviously
14 take the meet and confer obligations and the purpose of the
15 meet and confer process very seriously.
16            With that said, based on what I just heard, it does
17 not seem very likely to be productive, simply because it seems
18 as though the defendants are eager to sort of launch wholesale
19 attacks on plaintiffs' experts that may not be tightly linked
20 to the parameters of your Honor's bellwether decision.  As a
21 consequence, I think we're going to spend a fair amount of time
22 having conversations that simply result in the defendants
23 saying but we think your expert should be excluded entirely so
24 we're still going to file a motion, and it may just be more
25 productive to have the motion and set reasonable limits on the

1   motion practice, so that the parties are properly incentivized
2   to focus the arguments they are making in accordance with your
3   Honor's prior decision.
4            THE COURT:  I think that's regrettably probably true.
5   My second question to you is if you have assurance that you
6   could raise challenges at trial, during a pretrial hearing,
7   after summary judgment, do you think on your end you could move
8   forward with summary judgment without the need to address
9   Daubert challenges?
10           MR. CARTER:  Your Honor, that is our view.  Obviously
11  we don't think that the defendants' experts can serve to
12  overcome the existence of a genuine issue of material fact.  So
13  we don't see the exclusion of their opinions as being essential
14  or critical to summary judgment.  And to the extent there is
15  isolated instances in which they are, we can deal with them
16  there.
17           THE COURT: Okay.  That helps some.  Okay.
18           I think I am going to take all this under advisement
19  and issue an order in the coming days, with the assumption that
20  the plaintiffs will reserve any challenges to defendants'
21  experts to a pretrial procedure following summary judgment.
22  And that the only motions that are going to be filed at this
23  time will be defendants' motions challenging the plaintiffs.
24           MR. MOHAMMEDI:  This is Omar Mohammedi.  Can I say
25  something?

1    THE COURT:  Yes.

2    MR. MOHAMMEDI:  One of the reasons why we did not
3    challenge many of the experts that plaintiff presented is
4    because we didn't have enough pages to use to be able to
5    challenge them.  And one of the most important expert that has
6    been involved with plaintiffs since 2004 is Kohlmann, Evan
7    Kohlmann.  And we felt that even though we are really going to
8    follow your guidance, we thought because of this case, it is
9    not about fact.  And I agreed with Mr. Carter that it is not
10   about fact.  It is mostly about experts.  We do believe experts
11   is the most important component of this case.  And defense
12   counsel may need to have an opportunity to challenge them.  And
13   we thought because of that, and plus, in the last round, we had
14   40 pages where plaintiffs had 50.  As you said, as a matter of
15   fairness, we're hoping to get 50 pages this time to challenge
16   specifically Kohlmann and others.  And we are hoping that you
17   will take that into consideration as well for us to be able to
18   have full opportunity to challenge those experts as a matter of
19   fairness, so defendants are not prejudiced with respect to
20   those charges.

21   THE COURT:  I assume Evan Kohlmann is one of the two
22   experts that will be part of the consolidated motion?

23   MR. MOHAMMEDI:  Correct, your Honor.  That's the
24   reason why we did not want to challenge him in the first place.
25   It was too much for us to deal with for those limited pages and

we all separately and together have a lot at stake with respect to Evan Kohlmann.

        THE COURT:  Understood.  Thank you.  All right.  This was a helpful conference.

        Does anyone on the plaintiffs' side have anything else they want to say?

        Anyone on the defendants' side have anything else they want to add?

        All right, everybody.  Thank you very much.  I appreciate your time.  We are adjourned.

        (Adjourned)