**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x

| | | |
|---|---|---|
| IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 | : | MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO PERMIT ATTACHMENT AND EXECUTION PURSUANT TO 28 U.S.C. § 1610(c) |
| | : | |
| | : | |
| | : | |
| | : | 03 MDL 1570 (GBD)(FM) |

------------------------------------------------------------------x

This Document Relates to
*Ray, et al. v. Islamic Republic of Iran, et al.*
1:19-cv-00012 (GBD)(SN)

The *Ray* Plaintiffs, through counsel, hereby respectfully submit this Memorandum of Law in Support of Plaintiffs' Motion to Permit Attachment and Execution Pursuant to 28 U.S.C. § 1610(c) on approximately 127,271 Bitcoin currently held by the U.S. Government, and all proceeds traceable thereto ("Bitcoin Assets"). The *Ray* Plaintiffs have a valid unsatisfied judgment against Iran. Defendant Iran received sufficient notice of the *Ray* judgment and a reasonable period of time has passed. The Bitcoin Assets and all proceeds traceable thereto are assets of an agency or instrumentality of Iran and Judgment Debtors of the *Ray* Creditors.

The Bitcoin Assets are currently the subject of a forfeiture proceeding pending in the Eastern District of New York pursuant to Rule G of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions in the Federal Rules of Civil Procedure.

The *Ray* Plaintiffs seek specific Court approval to attach and execute on the Bitcoin Assets that were formerly property of the Iran and China Investment Development Group ("Iran-China Group"). The Iran-China Group, doing business on the blockchain as "Lubian.com" or "LuBian," is an agency or instrumentality of Iran that has materially supported that country's efforts to evade Western sanctions by mining cryptocurrency in Iran. Through this scheme, Iran

converts sanctioned Iranian oil and gas into electricity, which miners then use to generate cryptocurrency for the Iranian government to use outside the traditional global banking systems. LuBian was the cryptocurrency mining pool for the Iran-China Group, an Iranian joint-stock company that partnered with the Iranian government to build a large Bitcoin mine in Rafsanjan, Iran to assist that country's longstanding efforts to evade U.S. Sanctions.

Under the Terrorism Risk Insurance Act ("TRIA"), the *Ray* Plaintiffs have the right to attach and execute on the property of Iran and its agencies and instrumentalities, including the Iran-China Group, "notwithstanding any other provision of law." 15 U.S.C. § 6701 note.

Accordingly, the *Ray* Plaintiffs hereby seek to assert their superior interest in the Bitcoin Assets, or at least so much as may ultimately be necessary to satisfy the outstanding compensatory damages, plus post-judgment interest, on their judgments, which TRIA makes senior to any interest that the government or other claimants could assert.

**I.    BACKGROUND**

An order of partial final judgment was entered by this Court on February 19, 2020 on behalf of the *Ray* Plaintiffs against the Islamic Republic of Iran (*Ray* Doc. No. 221).

On March 4, 2020, the *Ray* Plaintiffs moved this Court for permission to proceed directly to service on Defendant Iran through diplomatic means. (*Ray* Doc. No. 222). Plaintiffs' motion was granted on March 6, 2020. (*Ray* Doc. No. 223). The *Ray* Plaintiffs sought, and were granted, permission to proceed directly to diplomatic service through the State Department pursuant to 28 U.S.C. § 1608(a)(4) in light of Iran's certain refusal to accept service of the partial final judgment in this matter via direct mail under 28 U.S.C. § 1608(a)(3). Service exclusively through diplomatic channels was sufficient and appropriate for giving Iran notice of the *Ray* Plaintiffs' final judgment.

The *Ray* Plaintiffs delivered the required final judgment documents to be transmitted to the United States Department of State by the SDNY Clerk's Office. On March 9, 2020, the SDNY Clerk of Court docketed a Certificate of Mailing of the *Ray* Plaintiffs' partial final judgment to H.E. Mohammad Javad Zarif at the Ministry of Foreign Affairs of the Islamic Republic of Iran, Imam Khomeini Avenue, Tehran, Iran. (*Ray* Doc. No. 223) See also Letter and cashier's check from the SDNY Clerk to the Director of Consular Services at the U.S. State Department, dated March 9, 2020, attached to Plaintiffs' Motion as **Exhibit A**.

On August 16, 2020, the *Ray* judgment was delivered to the Iranian Foreign Minister with the assistance of the Foreign Interests Section of the Embassy of Switzerland in Tehran. See letter from the State Department, with attached "diplomatic notes" confirming service, dated September 15, 2020, attached to Plaintiffs' Motion as **Exhibit B**.

The corresponding return of the diplomatic notes to the Clerk's Office was recorded as a Clerk's Certificate of Mailing filed on the *Ray* docket on September 29, 2020 (*no docket number*), attached to Plaintiffs' Motion as **Exhibit C**.

The FSIA service methods described at 28 U.S.C. § 1608(a)(1) and (a)(2) were not applicable in this matter.

This Court's Order, dated March 6, 2020 (*Ray* Docket No. 223), permitted the *Ray* Plaintiffs to bypass the futile direct mail step of 28 U.S.C. § 1608(a)(3) and proceed directly to diplomatic service through the State Department.

The documents that were thusly served were as follows:

(1) Cover Letter to Mohammad Javad Zarif, Foreign Minister of the Islamic Republic of Iran;
(2) U.S. Dist. Court for the Southern District of N.Y. Clerk's Certificate of Default, dated February 12, 2020 (*Ray* Doc. No. 209);

3

(3) Order of Partial Final Default Judgment entered by the Honorable George B. Daniels on February 19, 2020 (*Ray* Doc. No. 221);

(4) Notice of Default Judgment prepared in accordance with 22 CFR § 93.2;

(5) Foreign Sovereign Immunities Act, 28 U.S.C. § 1602, *et seq.*;

(6) Right to Appeal Notice; and,

(7) Right to Appeal Form.

The *Ray* Plaintiffs provided three copies of each of these documents, in both English and Farsi (one copy for the SDNY; one copy for the U.S. State Department, and one copy to be served). Also enclosed was a pre-paid Federal Express waybill and envelope addressed to the U.S. State Department and a cashier's check in the amount of $2,275 made payable to "U.S. Embassy Bern." Plaintiffs further provided original, notarized Affidavits of Translators for each of the above-listed documents, in accordance with Page 12 of the U.S. District Court for the Southern District of N.Y. Clerk's Office Foreign Mailing Instructions, and which comports with the requirements with N.Y. CVP. LAW § 2101(b).

On September 20, 2024, certain *Ray* Plaintiffs were awarded additional economic damages. See Order Granting Partial Final Default Judgment (*Ray* Doc. No. 332). On October 24, 2024, the SDNY Clerk dispatched the supplemental economic damages award to Defendant Iran via diplomatic channels of the State Department (*Ray* Doc. No. 334). The SDNY Clerk docketed a Certificate of Mailing Received for the *Ray* supplemental economic damages on July 2, 2025. (*Ray* Doc. No. 345).

On October 24, 2024, upon request of the *Ray* Plaintiffs, the SDNY Clerk dispatched the supplemental economic damages award and supporting documents to Defendant Iran via diplomatic channels of the State Department (*Ray* Doc. No. 334). Six months later, on May 19,

2025, the *Ray* supplemental economic judgment was delivered to the Iranian Foreign Minister, again with the assistance of the Foreign Interests Section of the Embassy of Switzerland in Tehran.  See letter from the State Department, with attached "diplomatic notes" confirming service, dated June 24, 2025, attached to Plaintiffs' Motion as **Exhibit D**.  The SDNY Clerk docketed a Certificate of Mailing Received for the *Ray* supplemental economic damages on July 2, 2025.  (*Ray* Doc. No. 345).

FSIA plaintiffs are not bound to make attempts at futile mail service upon Iran.  In *Rubin v. Islamic Republic of Iran*, 1:03-cv-09370 (N.D.Ill, Jan. 18, 2008), the U.S. District Court for the Northern District of Illinois explicitly held, in the context of an action to enforce a judgment against Iran for its continued support for terrorism worldwide, that service of a default judgment by mail was not required of the *Rubin* Plaintiffs by the FSIA because that method of service had failed when the *Rubin* Plaintiffs attempted service of the summons and complaint to commence the litigation in the District of Columbia.  The *Rubin* court interpreted the FSIA's requirement regarding service of the judgment to call for and authorize the same method of service as had been utilized for service of the complaint and summons.  Thus, attempted mail service was unnecessary, and this Court's March 6, 2020 Order (*Ray* Docket No. 223), properly permitted the *Ray* Plaintiffs to proceed directly to diplomatic service through the State Department, bypassing the futile direct mail step of 28 U.S.C. § 1608(a)(3).

II.     **LEGAL ARGUMENT**

    A.     **The *Ray* Plaintiffs Have Complied with Both the FSIA And the Orders and Judgment of This Court Regarding Service**

"Under the FSIA, entry of a default judgment against a foreign state or its instrumentalities must be accompanied by service of that judgment." *Murphy v. Islamic Republic of Iran*, 778 F. Supp. 2d 70 (D.D.C. 2011).  This requirement of service, coupled with

5

the requirement that a plaintiff pursuing a claim under § 1605A of the FSIA can only obtain a default judgment after presenting evidence satisfactory to the court, together "ensure that having been served with an initial complaint and declining to participate in the litigation[,] a foreign state or entity remains protected by the requirement that a plaintiff substantiate her claim" and that foreign property interests are preserved "by insisting upon prompt notification of any entry of judgment that might put such interests at risk." *Murphy*, 778 F. Supp. 2d at 72.

As in *Heiser v. Islamic Republic of Iran*, *supra*, Defendant Iran here has made the deliberate choice to refuse service despite both exposure to billions of dollars in damages and evidence that it is perfectly capable of appearing in the courts of the United States when it wishes. See *Peterson v. Islamic Republic of Iran*, 10-cv-04518 (KBF); *In re 650 Fifth Avenue and Related Properties*, 08-cv-10934 (KBF); *Bank of Tokyo Mitsubishi UFJ, Ltd. v. Peterson*, 12-cv-04038 (BSJ); *Rubin v. Islamic Republic of Iran*, 637 F.3d 783 (7th Cir. 2011) *cert. denied*, 133 S.Ct 23 (2012); *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43 (2d Cir. 2010); *Ministry of Defense and Support of the Armed Forces of the Islamic Republic of Iran v. Cubic Defense Systems, Inc.*, 98-cv-1165-B (DHB) (S.D.Cal. January 3, 2013).

In compliance with FSIA Section 1608(c)(1), the judgment was served on Iran.

**B.  A Reasonable Period of Time Has Elapsed Such That the
*Ray* Plaintiffs Should Be Permitted to Enforce Their Judgment**

Following the service of a judgment, the FSIA establishes a condition precedent before a party such as the *Ray* Plaintiffs can formally attach and execute upon the property of a foreign sovereign. Section 1610(c) requires that a plaintiff seek leave of court before executing upon the property of a foreign state to enforce a judgment obtained under §1605A:

> "No attachment or execution… shall be permitted until the court has ordered such attachment and execution after having determined that

> a reasonable period of time has elapsed following entry of judgment and giving notice required under § 1608(e) of this chapter."

28 U.S.C. § 1610(c).

According to a House Report on the FSIA, the procedures mandated by § 1610(c) are in place to ensure that sufficient protection is afforded to foreign states that may be defendants in actions in courts in the United States:

> In some jurisdictions in the United States, attachment and execution to satisfy a judgment may be had simply by applying to a clerk or local sheriff. This would not afford sufficient protection to a foreign state. This subsection contemplates that the courts will exercise discretion in permitting execution. Prior to ordering attachment and execution, the court must determine that a reasonable period of time has elapsed following the entry of judgment…In determining whether the period of time has been reasonable, the court should take into account procedures, including legislation, that may be necessary for payment of a judgment by a foreign state, which may take several months; representation by the foreign state of steps being taken to satisfy the judgment; or any steps being taken to satisfy the judgment; or evidence that the foreign state is about to remove assets from the jurisdiction to frustrate satisfaction of the judgment.

*Levin v. Bank of New York*, No. 1:09-cv-59000 (RPP) (MHD) (S.D.N.Y. Jan. 28, 2011) *quoting* H.R. Rep. No. 1487, 94th Cong., 2d Sess. 30, reprinted in 1976 U.S. Code Cong. & Admin. News 6604, 6629.

Iran has never voluntarily paid any judgment entered as a result of its continued state sponsorship of terrorism around the world. The *Ray* Plaintiffs' Partial Final Default Judgment was issued by this Court over five and a half (5½) years ago and served on the Defendant Islamic Republic of Iran more than five (5) years ago.

The U.S. District Court for the District of Columbia has held that a "reasonable period of time" for purposes of § 1610(c) is sixty (60) days. *Valore v. Islamic Republic of Iran*, 1:08-cv-

7

01273-RCL (D.D.C. Jun. 8, 2003).  Chief Judge Lamberth found "no basis in the FSIA to suggest that any longer period is needed, particularly in comparison to the period of time – 60 days, 28 U.S.C. § 1608(e) - that a foreign sovereign is given to respond to initial service of a complaint and summons under the Act."  *Id*.  Chief Judge Lamberth has also held separately that six weeks is a reasonable period of time to satisfy the requirements of § 1610(c), especially when "there is no evidence that the defendant has taken any steps toward the payment of its debt." *Ned Chartering and Trading, Inc. v. Republic of Pakistan*, 130 F. Supp. 2d 64 (D.D.C. 2001).

The *Ray* Plaintiffs respectfully submit to the Court that, applying the applicable law to the circumstances presented here, Plaintiffs should be permitted to initiate an enforcement action against the Bitcoin Assets.  More than five (5) years have passed since Iran was served with notice of the *Ray* judgment.  More than a reasonable time has passed since the *Ray* Plaintiffs judgment was entered and since Defendant Iran was served with the judgment.

### III.    CONCLUSION

For the reasons stated above, the *Ray* Plaintiffs respectfully request that this Honorable Court enter the attached proposed Order GRANTING the Plaintiffs' Motion to Permit Attachment and Execution Pursuant to 28 U.S.C. § 1610(c) against the Bitcoin Assets currently held by the U.S. Government, and all proceeds traceable thereto.

January 20, 2026                                                  Respectfully submitted,

/s/ *Timothy B. Fleming*
Timothy B. Fleming (DC Bar No. 351114)
WIGGINS CHILDS PANTAZIS
FISHER GOLDFARB, PLLC
2202 18th Street, NW, #110
Washington, DC  20009-1813
(202) 467-4489

8

Dennis G. Pantazis (AL Bar No. ASB-2216-A59D)
WIGGINS CHILDS PANTAZIS
FISHER GOLDFARB, LLC   (*Lead Counsel*)
The Kress Building
301 19th Street North
Birmingham, AL  35203
(205) 314-0500

Richard D. Hailey (IN Bar No. 7375-49)
Mary Beth Ramey (IN Bar No. 5876-49)
RAMEY & HAILEY
951 N. Delaware St.
Indianapolis, IN 46202
(317) 582-0000

Robert M. Foote (IL Bar No. 03124325)
Craig S. Meilke (IL Bar No. 03127485)
FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC
10 West State Street, Suite 200
Geneva, IL  60134
(630) 232-7450

**Attorneys for the Ray *Plaintiffs***